**Kelvin Kianta BROOKS, Appellant,**

v.

**The STATE of Texas.**

**No. PD–0210–09.**

Court of Criminal Appeals of Texas.

Oct. 6, 2010.

Rehearing Denied Nov. 17, 2010.

Walter M. Reaves, Jr., West, for Appellant.

John R. Messinger, Asst. Crim. D.A., Waco, Jeffrey L. Van Horn, State's Attorney, Austin, for State.

## *OPINION*

HERVEY, J., announced the judgment of the Court and delivered an opinion in which KELLER, P.J., KEASLER, and COCHRAN, JJ., joined.

We granted discretionary review in this case to address, among other things, whether there is any meaningful distinction between a legal-sufficiency standard under *Jackson v. Virginia*[1] and a factual-sufficiency standard under *Clewis v. State* and whether there is a need to retain both standards.[2] Under the *Jackson v. Virginia* legal-sufficiency standard, a reviewing court is required to defer to a jury's credibility and weight determinations.[3] In *Clewis*, this Court adopted a factual-sufficiency standard, which is supposed to be distinguished from a *Jackson v. Virginia* legal-sufficiency standard primarily by not requiring a reviewing court to defer to a jury's credibility and weight determinations.[4] But then *Clewis* contradicted itself by also requiring a reviewing court to apply this standard with deference to these jury determinations "so as to avoid an appellate court's substituting its judgment for that of the jury."[5] After having made several attempts to "clarify" *Clewis* in part to resolve this fundamental contradiction, we eventually came to realize that the *Clewis* factual-sufficiency standard is "barely distinguishable" from the *Jackson*

---

1.  443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

2.  922 S.W.2d 126 (Tex.Cr.App.1996).

3.  *See Jackson*, 443 U.S. at 319, 99 S.Ct. 2781.

4.  *See Clewis*, 922 S.W.2d at 133.

5.  *See id.*

*v. Virginia* legal-sufficiency standard.[6] We now take the next small step in this progression and recognize that these two standards have become essentially the same standard and that there is no meaningful distinction between them that would justify retaining them both. We, therefore, overrule *Clewis* and decide that the *Jackson v. Virginia* legal-sufficiency standard is the only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the State is required to prove beyond a reasonable doubt.

The record reflects that, in cause number 10–07–00309–CR, a jury convicted appellant of possessing with intent to deliver more than four but less than 200 grams of crack cocaine and sentenced him to 25 years in prison. Appellant claimed on direct appeal that the evidence is legally and factually insufficient to support the intent-to-deliver element of this offense.

The evidence shows that two police officers went into a bar to investigate a report that someone matching appellant's description was there with a gun. When the officers asked appellant to step outside, appellant ran and threw two baggies towards a pool table just before one of the officers tased him. One of the baggies contained a small amount (about 3 grams) of marijuana. The other baggie contained one baggie holding 4.72 grams of crack cocaine and another baggie holding six ecstasy tablets that weighed 1.29 grams.[7] Appellant also had a cell phone and, according to one of the officers, "a couple of dollars."[8] Appellant did not appear to be under the influence of narcotics, and he was not in possession of any drug paraphernalia that could have been used for smoking crack cocaine. The police did not find a gun. The police gave appellant's cell phone and money to an acquaintance of appellant's before they took appellant to jail.

An experienced Waco Police Department drug-enforcement investigator (Thompson) testified that the bag containing the 4.72 grams of crack cocaine contained "two larger size rocks and then maybe a smaller one" and a useable amount of "crumbs." He testified that each of the two large rocks weighed at least two grams and the other one weighed "a gram and a half or something like that." Thompson testified that "he would say" that 4.72 grams was a "dealer amount," which could have been cut up into 23 or 24 rocks. He testified that 4.72 grams of crack cocaine is worth about $470.

Thompson stated that a "typical quantity" that a dealer would have would be more than two rocks and that he "would think" that someone with more than a gram would be a dealer. Thompson testified that it is not "typical" for drug users to be in possession of a large amount of drugs and that he has "not run across many people that are [crack cocaine] users that have more than one to two rocks" because they are going to "smoke it as soon as [they] can get it." He also testified that "most" crack cocaine users "typi-

---

6. *See Rollerson v. State*, 227 S.W.3d 718, 724 (Tex.Cr.App.2007) (factual-sufficiency review is "barely distinguishable" from legal-sufficiency review); *Watson v. State*, 204 S.W.3d 404, 442–48 (Tex.Cr.App.2006) (Cochran, J., dissenting) (discussing this Court's attempts to "clarify" *Clewis* ).

7. Appellant was also charged with and convicted of possessing more than one but less than four grams of ecstasy and sentenced to 10 years in prison in cause number 10–07–00310–CR. That conviction is not at issue in this proceeding.

8. Appellant testified at trial that he had "like $30 or $40" on him.

cally" would have some type of paraphernalia "to smoke the crack with" and that "[t]ypically dealers don't have crack pipes because it's not really common for them to use their product that they are selling." For example, Thompson testified:

> Q. [STATE]: Okay. So if somebody had approximately 4.72 grams and about three or four rocks and some crumbs, is that a dealer amount or user amount?
>
> A. [THOMPSON]: I would say that's dealer amount.
>
>     *     *     *
>
> Q. So if he's got 4.72 grams—
>
> A. I would think they were a dealer.
>
> Q. Okay. I'm going to go—oh, you said that there are some other things that you would look for to see if somebody was dealing as opposed to using the drugs. What are some of those things that you would look for?
>
> A. In my experience, and we've come across people that are just possessing crack to use it. They usually have what is called a crack pipe or some type of heating element to heat the crack up with. Most of the people that we've come across out in the field that smoke crack have a crack pipe somewhere or have some brillo which you use inside of your crack pipe as a filter to keep from inhaling the whole piece of crack up when you're smoking it. Typically dealers don't have crack pipes because it's not really common for them to use their product that they are selling. You can't make any money if you're hooked on your own product. So typically a user is going to have some type of instrument to smoke the crack with, and, like I said before, they normally don't have more than one or two because they are smok-

ing. You don't save crack. It's not like a rainy day type of deal. You want to smoke it as soon as possible.[9]

On cross-examination, Thompson described other factors, none of which are present in the record in this case, indicating that a person could be a dealer: (1) possession of five, ten, or twenty dollar bills; (2) names in the person's cell phone; (3) possession of some document identifying who owes what; (4) possession of a weapon; or (5) others observed the person trying to sell drugs. Thompson also acknowledged that a person could possess 4.72 grams of crack cocaine for personal use.

Appellant testified that he possessed only the baggie containing the small amount of marijuana. He denied possessing the baggies containing the crack cocaine and the ecstasy pills. Appellant also admitted that he has two prior convictions for possession of cocaine and another prior conviction for possession with intent to deliver cocaine. The jury was instructed in the charge that it could have considered these extraneous offenses "in determining the intent, motive, opportunity, preparation, plan, knowledge, identity, or absence of mistake or accident by the Defendant, if any, in connection with the offenses, if any, alleged against him in the indictment in this case, and for no other purpose."

During closing jury arguments, the State relied primarily on Thompson's testimony to argue that appellant possessed the crack cocaine with the intent to deliver it:

> [STATE]: There is no evidence at all, none, that he was a user. What does that tell you? What does that tell the reasonable person? I'm going to go to

---

9. We note that appellant was charged with just possessing the six ecstasy pills that weighed 1.29 grams. The record contains no testimony on how many pills a typical user would take or a typical seller would possess with intent to deliver.

Investigator Thompson right now because he kind of ties in with that. The dealer level back on the crack, and I'm bouncing back and forth because it's basically the same charge. Just with crack we have added the element of intent to deliver. But Investigator Thompson testified that a typical user, one, two rocks, max, because what do they do when they get it? They want to smoke it because they are craving this drug, because they have to use it. They don't hold it for a rainy day. They don't keep it for later. They use it then. And when they use it, they have paraphernalia on them. They don't carry a couple of rocks and then go home and find their stuff. They have it all on their person. No drug paraphernalia, no brillo pad, no push pipe, no push rod, no crack pipe, nothing. Again, because he's not a user. There is no evidence of that. In fact, the amount that he had is dealer amount. This is 23 to 25 crack rocks. It's way more than one or two for a user. 4.72 grams doesn't really seem like a lot in here. It's a lot on the street. He had $500, $600 worth of drugs on him that night.

*     *     *

About him being a user and not a dealer, he got on the stand. Did he tell you, "I'm a user, not a dealer"? He didn't say that. That would have been the perfect chance for him to say that. Does he look like a user? You know we had somebody in voir dire say, "I've seen crack users, and I can tell when I see them." Did he have a pipe on him? No. What else did he not have? You know, no pipe. He had some money on him, not a lot because he hadn't started selling yet. He still had his whole 25–rock stash. He hadn't started selling yet. He had the cell phone. Yeah, it would have been nice to get the names

out of the cell phone and see if they match up with other drug dealers, you know, that we know. The police, they were being nice. They gave the phone to his sister and let her take it home. So are we going to blame the cops for being a little too nice that night, even after he had cussed at them and resisted, swung at them, kicked them? That's not reasonable either.

During its closing jury arguments, the defense relied on other factors to argue that the evidence did not show appellant's intent to deliver.

[DEFENSE]: I know Mr. Brooks has a past. He came up here and he testified that he has a juvenile conviction, that he has two possession convictions, he has a delivery conviction. And when you look at all that, it would be easy for you to go back there and say, "You know what? Because of all this, you know, he's not telling the truth and we shouldn't believe him." But I don't think that's what you're going to do. Yeah, he has had run-ins with the law, and as he stated, he panicked. He panicked because he had the marijuana on him. But as he testified to you, he didn't know anything about that cocaine, didn't know anything about that [ecstasy]. There was no evidence presented to you other than Officer Thompson who came up here yesterday and said, "Oh, it's four grams to 200 grams, but that 4.72, oh, yeah, easy, that's a delivery. Oh, yeah. It's worth $500, $600." But listen to his testimony carefully. He also said that he looks for other things, too, and they should have looked for other things too. They should have looked to determine whether or not Mr. Brooks was carrying a large amount of money, whether or not he had a gun, and we know that there was no gun found in that place now, whether or not he had

any documents with him that would indicate, "These people owe me money" or "This is who I sold to." They should have gotten a cell phone to see if there were any callers in there that were potential buyers or users or anything of that nature. They should have asked people in the bar whether or not Mr. Brooks when he went in there, did anybody ever come up to him and say, "Do you have anything I can get from you tonight" or "Can you sell me something?" There was no testimony whatsoever on that. All you have is, ladies and gentlemen, as far as the delivery is what Allen Thompson said, but most importantly, as I indicated to you, you have to show that he was in possession of those items, and it's just not there.

The court of appeals decided that "[s]tanding alone, 4.72 grams is insufficient evidence of intent [to deliver because this amount is also consistent with personal use], additional evidence is required." *See Brooks v. State*, No. 10–07–00309–CR, slip op. at 8, 2008 WL 4427266 (Tex.App.-Waco, delivered October 1, 2008) (memorandum opinion not designated for publication). The court of appeals decided that the additional evidence is legally sufficient "to establish possession with intent to deliver," but that "viewing the evidence in a neutral light, it is not factually sufficient." *See Brooks*, slip op. at 9–10 ("Viewing the evidence in the light most favorable to the verdict, the evidence is legally sufficient to establish possession with intent to deliver. However, viewing the evidence in a neutral light, it is not factually sufficient. The record does not reflect that Brooks was arrested in a high crime or high drug area, the drugs were packaged in such a way to suggest that Brooks is a dealer, Brooks

was in possession of any drug paraphernalia for the purpose of dealing, or Brooks possessed a large amount of cash.... Accordingly, we find the proof of guilt to be so weak as to render the jury's verdict clearly wrong and manifestly unjust.").

We granted review on both the appellant's and the State's petitions for discretionary review. Appellant's petition for discretionary review presents the following ground for review:

(1) The Court of Appeals erred in holding the evidence was legally sufficient to establish appellant had the intent to distribute cocaine, where the court found the same evidence was factually insufficient to establish the necessary intent.[10]

The State's petition for discretionary review presents the following grounds for review:

(1) Is there any meaningful distinction between legal sufficiency review under *Jackson v. Virginia* and factually [sic] sufficiency review when that review is limited to the weakness of the evidence in the abstract and, if so, does it escape review in this Court?

(2) Did the Tenth Court of Appeals ignore its duty to adequately explain why the evidence, though legally sufficient, is so weak as to render the jury's verdict clearly wrong and manifestly unjust?

## I. Is There Any Meaningful Distinction Between *Jackson v. Virginia* Legal–Sufficiency Review and *Clewis* Factual–Sufficiency Review

We begin the discussion by noting that in *Watson* this Court recognized that a factual-sufficiency standard is "barely distinguishable" from a legal-sufficiency standard and that "the **only** apparent differ-

---

**10.** The question presented in this ground is whether a jury could rationally find beyond a reasonable doubt that appellant possessed with intent to deliver 4.72 grams of crack cocaine because appellant fit a profile of "most" or "typical" drug dealers.

ence" between these two standards is that the appellate court views the evidence in a "neutral light" under a factual-sufficiency standard and "in the light most favorable to the verdict" under a legal-sufficiency standard. *See Watson,* 204 S.W.3d at 415 (emphasis supplied). It is fair to characterize the *Jackson v. Virginia* legal-sufficiency standard as:

> Considering all of the evidence in the light most favorable to the verdict, was a jury rationally justified in finding guilt beyond a reasonable doubt.[11]

Compare this to the *Clewis* factual-sufficiency standard which may fairly be characterized as:

> Considering all of the evidence in a neutral light, was a jury rationally justified in finding guilt beyond a reasonable doubt.[12]

■ Viewing the evidence "in the light most favorable to the verdict" under a legal-sufficiency standard means that the reviewing court is required to defer to the jury's credibility and weight determinations because the jury is the **sole** judge of the witnesses' credibility and the weight to be given their testimony.[13] Viewing the

evidence in a "neutral light" under a factual-sufficiency standard is supposed to mean that the reviewing court is not required to defer to the jury's credibility and weight determinations and that the reviewing court may sit as a "thirteenth juror" and "disagree[ ] with a jury's resolution of conflicting evidence" and with a jury's "weighing of the evidence." *See Tibbs v. Florida,* 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982) (internal quotes omitted) (describing appellate reversals of convictions based on evidentiary weight); *Watson,* 204 S.W.3d at 447 (Cochran, J., dissenting) (factual-sufficiency standard "explicitly makes the reviewing court a 'thirteenth juror' who makes an independent, *de novo* determination of credibility and the weight to be given the testimony and the inferences to be drawn from the base facts").[14] Therefore, the difference between a factual-sufficiency standard and a legal-sufficiency standard is that the reviewing court is required to defer to the jury's credibility and weight determinations (i.e., it must view the evidence in the light most favorable to the verdict) under a legal-sufficiency standard while it is not

---

**11.** *See Jackson,* 443 U.S. at 319, 99 S.Ct. 2781.

**12.** Our decision in *Watson* approved of this formulation of the *Clewis* standard. *See Watson,* 204 S.W.3d at 415. Stated another way, the question under the *Clewis* factual-sufficiency standard is whether, after viewing all of the evidence in a "neutral light," the jury's verdict is either "clearly wrong and manifestly unjust" or "against the great weight and preponderance of the [conflicting] evidence." *See Watson,* 204 S.W.3d at 414–15; *see also Clewis,* 922 S.W.2d at 129 (reviewing court views the evidence in a neutral light and sets aside the jury's verdict "if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust").

**13.** *See Jackson,* 443 U.S. at 319, 99 S.Ct. 2781 ("Once a defendant has been found guilty of

the crime charged, the factfinder's role as weigher of the evidence is preserved through a legal conclusion that upon judicial review *all* of the evidence is to be considered in the light most favorable to the prosecution.") (emphasis in original) and at 326, 99 S.Ct. 2781 (a "court faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution").

**14.** The Supreme Court in *Tibbs* explained the difference between reversals based on evidentiary sufficiency (i.e., *Jackson v. Virginia* ) and reversals based on evidentiary weight (i.e., factual-sufficiency) which "draws the appellate court into questions of credibility." *See Tibbs,* 457 U.S. at 38 n.11, 102 S.Ct. 2211.

required to defer to a jury's credibility and weight determinations (i.e., it must view the evidence in a "neutral light") under a factual-sufficiency standard. *See id.; Johnson v. State*, 23 S.W.3d 1, 13 (Tex.Cr. App.2000) (McCormick, P.J., dissenting) ("To defer or not to defer, that is the question.").

It is significant that *Clewis* purported to treat the evidentiary-weight standard described in *Tibbs* as a component of the *Clewis* factual-sufficiency standard that views the evidence in a "neutral light." *See Clewis*, 922 S.W.2d at 149 (Clinton, J., concurring) ("The reviewing court no longer 'views the evidence in the light most favorable to the prosecution;' rather it must consider and weigh the evidence to determine whether the jury's resolution of conflicting testimony was manifestly unjust" (citing *Tibbs*, 457 U.S. at 42, 102 S.Ct. 2211)).[15] This Court's decision in *Johnson* also recognized that "there appears to be no substantive differences" between the *Clewis* factual-sufficiency standard and the evidentiary-weight standard described in *Tibbs*. *See Johnson*, 23 S.W.3d at 8 n. 8 ("Elsewhere, the equivalent of determining legal sufficiency is often referred to as examining the 'sufficiency of the evidence,' and the companion term to factual sufficiency is referenced as reviewing the 'weight of the evidence.' However, there appears to be no substantive differences between these terms, and this Court has treated them interchangeably."). It is also noteworthy that the

evidentiary-weight standard described in *Tibbs* does not mention anything about the reviewing court being required to afford "appropriate deference" to the jury's credibility and weight determinations. *But see Clewis*, 922 S.W.2d at 133 (reviewing court must apply a factual-sufficiency standard in an "appropriately deferential" manner).

Therefore, if a reviewing court is required to defer in any manner to a jury's credibility and weight determinations, then it is not viewing the evidence in a "neutral light" and not applying the type of factual-sufficiency standard described in *Tibbs* and purportedly adopted in *Clewis*. And it is very clear that this Court's factual-sufficiency decisions have always required a reviewing court in a factual-sufficiency review to afford a great amount of deference (though this Court has never said precisely how much deference) to a jury's credibility and weight determinations. *See Clewis*, 922 S.W.2d at 133 (reviewing court may disagree with a jury's weighing of the evidence but in an "appropriately deferential" manner "so as to avoid an appellate court's substituting its judgment for that of the jury"); *see also Johnson*, 23 S.W.3d at 7 (factual-sufficiency review "must employ appropriate deference to prevent an appellate court from substituting its judgment for that of the fact finder, and any evaluation should not substantially intrude upon the fact finder's role as the sole judge of the weight and credibility given to witness testimony").[16]

---

15. The lead majority opinion in *Clewis* seems to have cited *Tibbs* for the proposition that "when conducting a factual sufficiency review, an appellate court cannot substitute its judgment for that of the factfinder since this would violate the defendant's right to trial by jury." *See Clewis*, 922 S.W.2d at 133 (citing *Tibbs*, 457 U.S. at 42, 102 S.Ct. 2211). *Tibbs*, however, stands for the opposite proposition-that the reviewing court can substitute its judgment for the factfinder's in conducting a

factual-sufficiency review. *See Tibbs*, 457 U.S. at 42, 102 S.Ct. 2211 (reviewing court can sit as "thirteenth juror" and disagree "with the jury's resolution of conflicting testimony" and "the jurors' weighing of the evidence").

16. This requirement that the reviewing court afford "appropriate deference" to a jury's credibility and weight determinations in a factual-sufficiency review is motivated by a con-

And in *Watson* this Court reiterated that it had never tolerated, "even in the 'factual sufficiency' context," an "appellate court simply opting to 'disagree' with the jury's verdict." *See Watson*, 204 S.W.3d at 416. This Court further stated in *Watson*:

> It is in the very nature of a factual-sufficiency review that it authorizes an appellate court, **albeit to a very limited degree,** to act in the capacity of a so-called "thirteenth juror."
>
> \*       \*       \*
>
> An appellate court judge cannot conclude that a conviction is "clearly wrong" or "manifestly unjust" simply because, on the quantum of evidence admitted, he would have voted to acquit had he been on the jury. Nor can an appellate judge declare that a conflict in the evidence justifies a new trial simply because he disagrees with the jury's resolution of that conflict.

*See Watson*, 204 S.W.3d at 416–17 (emphasis supplied).

This, however, is inconsistent with the evidentiary-weight standard described in *Tibbs* (and purportedly adopted in *Clewis* ) and with viewing the evidence in a "neutral light," which permit the reviewing court to show **no** deference at all to a jury's credi-

bility and weight determinations and to sit as a "thirteenth juror" without any limitation and to declare that a conflict in the evidence justifies a new trial simply because the reviewing court disagrees with the jury's resolution of conflicting evidence. *See Tibbs*, 457 U.S. at 42, 102 S.Ct. 2211. This is what is supposed to distinguish the factual-sufficiency standard from the legal-sufficiency standard. *See id.* Thus the *Clewis* factual-sufficiency standard's requirement that the reviewing court view the evidence with "appropriate deference" to a jury's credibility and weight determinations is not only contradictory and inconsistent with the evidentiary-weight standard described in *Tibbs*, it also makes the *Clewis* factual-sufficiency standard even more "barely distinguishable" from a *Jackson v. Virginia* legal-sufficiency standard.[17]

The final nail in the coffin that made a legal-sufficiency standard "indistinguishable" from a factual-sufficiency standard came in this Court's decision in *Lancon v. State*.[18] There this Court decided that the reviewing court cannot decide that the evidence is factually insufficient "solely because [it] would have resolved the conflicting evidence in a different way" since "the jury is the sole judge of a witness's credi-

cern that not requiring such deference might violate the right to trial by jury set out in the Texas Constitution. *See Clewis*, 922 S.W.2d at 134–36 (discussing "factfinder deference and right to trial by jury"); *see also Roberts v. State*, 221 S.W.3d 659, 661–62 n. 7 (Tex.Cr. App.2007) (in order to safeguard Texas' constitutional right to trial by jury, the Texas Supreme Court imposed several requirements upon the reviewing court when it reverses on factual-sufficiency grounds such as requiring the reviewing court to exercise its factual-sufficiency jurisdiction with "deferential standards of review").

**17.** *See Watson*, 204 S.W.3d at 441 (Cochran, J., dissenting) ("Thus, *Clewis* empowered courts of appeals to act as a 'thirteenth juror'

(one who was not even present to see and hear the witnesses) and disagree with the fact-finder's determination, but to be deferential to the fact-finder's judgment as it did so. This standard was ambiguous and contradictory from the beginning.") and at 445 (one "cannot view the evidence in a neutral light while at the same time giving deference to the factfinder's determinations of weight and credibility"); *Johnson*, 23 S.W.3d at 13–14 (McCormick, P.J., dissenting) (also discussing *"Clewis'* internal contradictions on the question of appellate deference to the jury's credibility and weight determinations").

**18.** 253 S.W.3d 699 (Tex.Cr.App.2008).

bility, and the weight to be given the testimony." *See Lancon*, 253 S.W.3d at 707. Our current formulation of a factual-sufficiency standard in *Lancon*, recognizing that the jury is "the sole judge of a witness's credibility, and the weight to be given their testimony," entirely eliminates the viewing the evidence in a "neutral light" component of a factual-sufficiency standard and makes the current factual-sufficiency standard indistinguishable from the *Jackson v. Virginia* legal-sufficiency standard. *See also Johnson*, 23 S.W.3d at 8 (also recognizing that if "a reviewing court was to accord absolute deference to the fact finder's determinations, then a factual sufficiency determination would, no doubt, become the functional equivalent of a legal sufficiency review").[19]

This may be illustrated by considering the following formulation of the factual-sufficiency standard that *Watson* approved: "Considering all of the evidence in a neutral light, was a jury rationally justified in finding guilt beyond a reasonable doubt." *See Watson*, 204 S.W.3d at 415. Substituting "in the light most favorable to the jury's verdict" for the "a neutral light" component of this formulation of the standard, as our cases such as *Lancon* have done by recognizing that "the jury is the sole judge of a witness's credibility, and

the weight to be given the testimony,"[20] the factual-sufficiency standard from *Watson* may be reformulated as follows: "Considering all of the evidence in **the light most favorable to the verdict,** was a jury rationally justified in finding guilt beyond a reasonable doubt." This is the *Jackson v. Virginia* legal-sufficiency standard. There is, therefore, no meaningful distinction between the *Jackson v. Virginia* legal-sufficiency standard and the *Clewis* factual-sufficiency standard, and these two standards have become indistinguishable.

## II. Double-Jeopardy Considerations

The *Clewis* factual-sufficiency standard being "barely distinguishable" (and now indistinguishable) from a legal-sufficiency standard also raises some troubling double-jeopardy questions under the United States Supreme Court's decision in *Tibbs*. First, we find it necessary to discuss the proceedings involving Mr. Tibbs in the Florida courts.

In 1976, the Florida Supreme Court reversed Tibbs' convictions for rape of one person and first-degree murder of another person because of the "weakness and inadequacy" of the rape victim's testimony, which was the only testimony that directly connected Tibbs to these crimes. *See*

---

19. A dissenting opinion in *Lancon* stated that the majority opinion "seems to say that from now on, the level of deference due a jury's decision will be total deference when the decision is based on an evaluation of credibility." *See Lancon*, 253 S.W.3d at 708 (Johnson, J., dissenting). We disagree. Our decision in *Lancon* merely recognizes that the jury is the "sole judge of a witness's credibility, and the weight to be given the testimony" thus requiring the reviewing court to defer to the jury on these determinations (i.e., view the evidence in the light most favorable to the verdict). Viewing the evidence in the light most favorable to the verdict, however, begins the *Jackson v. Virginia* legal-sufficiency analysis. The *Jackson v. Virginia* standard still requires the

reviewing court to determine whether *"any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." See Jackson*, 443 U.S. at 319, 99 S.Ct. 2781 (emphasis in original); *Watson*, 204 S.W.3d at 418 n. 7 (Hervey, J., dissenting). This is the portion of the *Jackson v. Virginia* standard that essentially incorporates a factual-sufficiency review. *See Clewis v. State*, 876 S.W.2d 428, 438–39 (Tex.App.-Dallas 1994) (*Jackson v. Virginia* standard necessarily encompasses a factual-sufficiency review), *vacated*, 922 S.W.2d at 136.

20. *See Jackson*, 443 U.S. at 319, 99 S.Ct. 2781.

*Tibbs v. Florida,* 397 So.2d 1120, 1126 (Fla.1981) (several aspects of the rape victim's testimony "cast serious doubt on her believability"); *Tibbs v. Florida,* 337 So.2d 788, 791 (Fla.1976) and at 792 (Boyd, J., specially concurring). The Florida Supreme Court remanded the case to the trial court for a new trial, which at the time was the remedy provided by Florida law upon a finding that the evidence did not support a defendant's conviction. *See id.*

Before Tibbs could be retried, the United States Supreme Court decided that double-jeopardy principles prohibit the states from retrying a defendant whose conviction has been reversed on appeal on evidentiary-sufficiency (i.e., legal-sufficiency) grounds essentially because this has the same effect as an acquittal by a jury.[21] After the United States Supreme Court handed down these decisions, the Florida trial court granted Tibbs' motion to dismiss his indictment on the grounds that double-jeopardy principles prohibited his retrial. *See Tibbs,* 397 So.2d at 1121. A Florida Court of Appeals reversed this order and reinstated Tibbs' indictment upon deciding that the Florida Supreme Court's 1976 decision reversing Tibbs' convictions "was based on the weight, rather than the legal sufficiency, of the evidence." *See id.; State v. Tibbs,* 370 So.2d 386, 388–89 (Fla.Dist.Ct.App.1979).

In 1981, the Florida Supreme Court reviewed this decision noting at the outset "that the distinction between an appellate reversal based on evidentiary weight and one based on evidentiary sufficiency was never of any consequence until [the United State's Supreme Court's decision in] *Burks,*" apparently because the remedy provided in both situations was a remand for a new trial. *See Tibbs,* 397 So.2d at 1122. The Florida Supreme Court examined several of its prior decisions that the Florida Court of Appeals had relied upon for deciding that there was a distinction in Florida law between convictions reversed for evidentiary weight (proper remedy is remand for new trial) and convictions reversed for evidentiary sufficiency (proper remedy is an appellate acquittal). *See Tibbs,* 397 So.2d at 1122–23 (Florida Court of Appeals "distinguished *Burks* by placing Tibbs' reversal in [evidentiary weight] category; appellate reversals where the evidence is technically sufficient but its weight so tenuous or insubstantial that a new trial is ordered"). The Florida Supreme Court, however, viewed "these ambiguous decisions as reversals which were based on [evidentiary] sufficiency; that is, as cases in which the state failed to prove the defendant's guilt beyond a reasonable doubt." *See Tibbs,* 397 So.2d at 1124–25.

The Florida Supreme Court, therefore, concluded that the Florida Court of Appeals' distinction between reversals based on evidentiary weight and reversals based on evidentiary sufficiency had a "questionable historical foundation." *See Tibbs,* 397 So.2d at 1125. Despite this questionable historical foundation, the Florida Supreme Court decided that its 1976 decision reversing Tibbs' convictions was "one of those rare instances in which reversal was based on evidentiary weight" and the Florida Supreme Court's "improper weighing of the evidence" and that double-jeopardy principles did not prohibit Tibb's retrial. *See Tibbs,* 397 So.2d at 1126–27. The Florida Supreme Court also decided that appellate reversals based on evidentiary weight, "if ever valid in Florida, should ... be eliminated from Florida law." *See Tibbs,* 397 So.2d at 1125.

21. *See Burks v. United States,* 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978); *Greene v.* *Massey,* 437 U.S. 19, 98 S.Ct. 2151, 57 L.Ed.2d 15 (1978).

On review of the Florida Supreme Court's 1981 decision that double-jeopardy principles did not bar Tibbs' retrial, the United States Supreme Court decided that double-jeopardy principles do not bar a retrial when an appellate court "sits as a 'thirteenth juror'" and "disagrees with the jury's resolution of the conflicting testimony." *See Tibbs*, 457 U.S. at 32, 42–43, 102 S.Ct. 2211. In reaching this decision, the United States Supreme Court noted that a reversal based on "insufficiency of the evidence" has the same effect as a jury acquittal "because it means that no rational factfinder could have voted to convict the defendant" and that "the prosecution has failed to produce sufficient evidence to prove its case." *See Tibbs*, 457 U.S. at 41, 102 S.Ct. 2211. The United States Supreme Court further stated that an appellate reversal based on evidentiary weight "no more signifies acquittal than does a disagreement among the jurors themselves" and that an "appellate court's disagreement with the jurors' weighing of the evidence does not require the special deference accorded verdicts of acquittal." The Supreme Court wrote:

> As we suggested just last Term, these policies do not have the same force when a judge disagrees with a jury's resolution of conflicting evidence and concludes that a guilty verdict is against the great weight of the evidence.... A reversal on this ground, unlike a reversal based on insufficient evidence, does not mean that an acquittal was the only proper verdict. Instead, the appellate court sits as a "thirteenth juror" and disagrees with the jury's resolution of the conflicting testimony. This difference of opinion no more signifies acquit-

tal than does a disagreement among the jurors themselves. A deadlocked jury, we consistently have recognized, does not result in an acquittal barring retrial under the Double Jeopardy Clause. Similarly, an appellate court's disagreement with the jurors' weighing of the evidence does not require the special deference accorded verdicts of acquittal. *See Tibbs*, 457 U.S. at 42, 102 S.Ct. 2211 (citation to authority and footnote omitted).

The United States Supreme Court also examined the Florida Supreme Court's 1976 decision reversing Tibbs' convictions and concluded that a "close reading" of that decision suggested "that the Florida Supreme Court overturned Tibbs' convictions because the evidence, although sufficient to support the jury's verdict, did not fully persuade the court of Tibbs' guilt." *See Tibbs*, 457 U.S. at 46, 102 S.Ct. 2211. The United States Supreme Court further noted that any ambiguity in this 1976 Florida Supreme Court decision was resolved in its 1981 decision when the Florida Supreme Court "unequivocally held" that its 1976 decision reversing Tibbs' convictions was "one of those rare instances in which reversal was based on evidentiary weight." *See Tibbs*, 457 U.S. at 47, 102 S.Ct. 2211. The United States Supreme Court concluded that under "these circumstances, the Double Jeopardy Clause [did] not bar retrial." *See id.*

We believe that the *Clewis* factual-sufficiency standard with its remedy of a new trial could very well violate double-jeopardy principles under *Tibbs* if factual-sufficiency review is "barely distinguishable" from legal-sufficiency review.[22] With our

---

**22.** For example, in *Watson*, in which we recognized that factual-sufficiency review is "barely distinguishable" from legal-sufficiency review, we stated that the first ground rule for factual-sufficiency review is that "the ap-

pellate court should be mindful that a jury has already passed on the facts, and convicted, and that the court should never order a new trial simply because it disagrees with the verdict, **but only where it seems to the court to**

prior decisions requiring a great amount of appellate deference to a jury's credibility and weight determinations and not permitting appellate courts to sit as "thirteenth jurors" except perhaps to "a very limited degree,"[23] it is questionable whether appellate reversals in Texas under such a factual-sufficiency standard are really reversals based on evidentiary weight (they may actually be reversals based on evidentiary sufficiency). Having decided in Part I of this opinion that the current *Clewis* factual-sufficiency standard is indistinguishable from a *Jackson v. Virginia* legal-sufficiency standard, the remedy of a new trial under this factual-sufficiency standard would violate double-jeopardy principles.

We also note that, were we to decide that reviewing courts must continue to apply a factual-sufficiency standard with its remedy of a new trial in criminal cases, then we must also be prepared to decide that they should apply this standard as "thirteenth jurors" with no deference at all to a jury's credibility and weight determinations in order to avoid these potential federal constitutional double-jeopardy issues. *See also Tibbs,* 457 U.S. at 42, 102 S.Ct. 2211. We must also keep in mind that such a nondeferential standard could violate the right to trial by jury under the Texas Constitution. *See Roberts,* 221 S.W.3d at 661–62 n. 7; *Clewis,* 922 S.W.2d at 133. Simply retaining and attempting to once again "clarify" the *Clewis* factual-sufficiency standard that is currently indistinguishable from a *Jackson v. Virginia* legal-sufficiency standard would not seem to be an option. Retaining any kind of factual-sufficiency standard in criminal

cases would, therefore, still make it necessary for this Court to overrule *Clewis* and abandon its requirement, carried on by our subsequent decisions meant to "clarify" *Clewis,* that reviewing courts must be "appropriately deferential" to a jury's credibility and weight determinations. *See Clewis,* 922 S.W.2d at 133. Thus, the only way to retain a factual-sufficiency standard, which would be meaningfully distinct from a *Jackson v. Virginia* legal-sufficiency standard, would be to allow reviewing courts to sit as "thirteenth jurors." However, our factual-sufficiency decisions have consistently declined to do this. *See, e.g., Watson,* 204 S.W.3d at 416 (this Court has never tolerated "even in the 'factual sufficiency' context," an "appellate court simply opting to 'disagree' with the jury's verdict").

We believe that these and the reasons given by the Florida Supreme Court for abandoning its factual-sufficiency standard are good reasons for discarding the confusing and contradictory *Clewis* factual-sufficiency standard. We agree with the Florida Supreme Court that:

> Considerations of policy support, if not dictate, this result. Elimination of [reversals based on evidentiary weight] accords Florida appellate courts their proper role in examining the sufficiency of the evidence, while leaving questions of weight for resolution only before the trier of fact. Eliminating reversals for evidentiary weight will avoid disparate appellate results, or alternatively our having to review appellate reversals based on evidentiary shortcomings to

represent a manifest injustice...." *See Watson,* 204 S.W.3d at 414. This, however, arguably describes a situation where "the prosecution has failed to produce sufficient evidence to prove its case" and "an acquittal was the only proper verdict." *See Tibbs,* 457 U.S. at

41–42, 102 S.Ct. 2211. Thus described, our factual-sufficiency standard with its remedy of a new trial could violate double-jeopardy principles. *See id.*

23. *See Watson,* 204 S.W.3d at 416–17.

determine whether they were based on sufficiency or on weight. Finally, it will eliminate any temptation appellate tribunals might have to direct a retrial merely by styling reversals as based on "weight" when in fact there is a lack of competent substantial evidence to support the verdict or judgment and the double jeopardy clause should operate to bar retrial.

*See Tibbs*, 397 So.2d at 1125–26.[24]

## III. Is *Clewis* Necessary to Address Some Widespread Criminal Justice Problem That *Jackson v. Virginia* Is Inadequate To Address

We agree with the discussion in Judge Cochran's dissenting opinion in *Watson* that there are no jurisprudential systemic problems for which the *Jackson v. Virginia* legal-sufficiency standard is inadequate or that can be resolved more satisfactorily in other ways besides retaining *Clewis'* "internally inconsistent" factual-sufficiency standard. *See Watson*, 204 S.W.3d at 448–50 (Cochran, J., dissenting) and at 450 (*Clewis* "has not contributed to the integrity of the appellate review process; it has led to inconsistent results; and it has required numerous, but futile, attempts to clarify its content and application").[25] It bears emphasizing that a rigorous and proper application of the *Jackson v. Virginia* legal-sufficiency standard is as exacting a standard as any factual-sufficiency standard (especially one that is "barely distinguishable" or indistinguishable from a *Jackson v. Virginia* legal-sufficiency standard).[26] A hypothetical

---

**24.** We also note that the Florida Supreme Court's 1981 decision in *Tibbs* examined its 1976 decision in *Tibbs*, other Florida state-court decisions, and the Florida Court of Appeals' decision in determining whether its 1976 decision reversing Tibbs' conviction was a reversal based on evidentiary weight or a reversal based on evidentiary sufficiency. *See Tibbs*, 397 So.2d at 1125–27. The United States Supreme Court examined the Florida Supreme Court's 1976 decision reversing Tibbs' conviction and the Florida Supreme Court's 1981 decision that Tibbs' retrial did not violate double-jeopardy principles in determining that the Florida Supreme Court's 1976 decision reversing Tibbs' conviction was a reversal based on evidentiary weight and not a reversal based on evidentiary sufficiency. *See Tibbs*, 457 U.S. at 46–47, 102 S.Ct. 2211. A single *Jackson v. Virginia* legal-sufficiency standard probably would have avoided all of this. *See Tibbs*, 397 So.2d at 1125–26 (eliminating reversals based on evidentiary weight will avoid "having to review appellate reversals based on evidentiary shortcomings to determine whether they were based on sufficiency or on weight").

**25.** In addition, having two evidentiary standards instead of one rigorously and properly applied standard may actually be detrimental. *See* Amanda Peters, *Symposium: Treaties and Domestic Law After Medellin v. Texas: Article: The Meaning, Measure, and Misuse of Stan-*

*dards of Review*, 13 Lewis & Clark L.Rev. 233, 255–56 note 3 (Spring 2009) (having two standards of sufficiency review promotes the "boilerplate" recitation of both standards and the rigorous application of neither).

**26.** *See Watson*, 204 S.W.3d at 449 (Cochran, J., dissenting) ("reviewing courts must apply the *Jackson* legal sufficiency standard robustly, taking into account *all* of the evidence, although viewed in the light most favorable to the jury's verdict. If that evidence supports a rational and reasonable finding of guilt beyond a reasonable doubt, it cannot be said that the jury's verdict is manifestly unjust or shocks the conscience of the reviewing court. The verdict is either rational and reasonable or it is not; it cannot be 'semi-rational' and still meet the *Jackson* standard. There is no jurisprudential value in reversing a rational, reasonable verdict and forcing the parties to go back and do it again.") (footnotes omitted and emphasis in original); *Johnson*, 23 S.W.3d at 15 (McCormick, P.J., dissenting) (a properly applied *Jackson v. Virginia* legal-sufficiency standard is much more exacting than *Clewis* claims and when the evidence is sufficient under a properly applied *Jackson v. Virginia* legal-sufficiency standard, it can never be factually insufficient) and at 16 ("when the intermediate appellate courts determine that the evidence is sufficient under *Jackson v. Virginia* but 'factually insufficient' under *Cle-*

that illustrates a proper application of the *Jackson v. Virginia* legal-sufficiency standard is robbery-at-a-convenience-store case:

> The store clerk at trial identifies A as the robber. A properly authenticated surveillance videotape of the event clearly shows that B committed the robbery. But, the jury convicts A. It was within the jury's prerogative to believe the convenience store clerk and disregard the video. But based on *all* the evidence the jury's finding of guilt is not a rational finding.

*See Johnson*, 23 S.W.3d at 15 (McCormick, P.J., dissenting).

## IV. Texas Constitution, Texas Statutes And Case Law Revisited

Case law makes it fairly clear that, from the time that Texas was a republic in the 1830s and 1840s until the United States Supreme Court decided *Jackson v. Virginia* in 1979, this Court and its predecessors, under what are essentially the same constitutional and statutory provisions that currently exist and existed when *Clewis* was decided in 1996, applied a single and deferential evidentiary-sufficiency standard in criminal cases that essentially was the same standard as the *Jackson v. Virginia* standard.[27] And, until this Court decided *Clewis* in 1996, this Court applied only the *Jackson v. Virginia* evidentiary-sufficiency standard after the United States Supreme Court decided *Jackson v. Virginia* in 1979.[28] In 1996, however, *Clewis* decided that a civil factual-sufficiency standard is also constitutionally and statutorily mandated in criminal cases under state law.[29]

There is very little to add to what this Court has already extensively written on a direct-appeal court's constitutional and statutory authority to apply this factual-

*wis* to support a conviction, and remand a case for a new trial, they either will have misapplied *Clewis* (in which case the conviction should have been affirmed) or they will have failed to appreciate that the evidence is also insufficient under *Jackson v. Virginia* (in which case the defendant should have received an acquittal.") (footnotes omitted)).

**27.** *See Watson*, 204 S.W.3d at 406–07 (acknowledging that early case law never "expressly declared that factual-sufficiency review, *per se*, was authorized in criminal cases") and at 412–14 (also acknowledging that "factual sufficiency went into hiding in the late Forties and early Fifties" and did not begin to reveal itself again until 1994 culminating in the 1996 *Clewis* decision); *Watson*, 204 S.W.3d at 424–32 (Cochran, J., dissenting) (discussing origins of Texas appellate review of evidentiary sufficiency and concluding, "Until *Clewis* in 1996, this Court had consistently used a single standard (although the precise wording varied) and reviewed the evidence in the light most favorable to the factfinder, giving great deference to the jury's credibility and weight determinations.").

**28.** *See Watson*, 204 S.W.3d at 412–14; *Watson*, 204 S.W.3d at 432–33 (Cochran, J., dissenting) (noting that this Court quickly adopted the *Jackson v. Virginia* standard "and adhered to that single, constitutionally mandated standard for seventeen years").

**29.** *Clewis* decided that a direct-appeal court's constitutional and statutory jurisdiction to review "questions of fact" in criminal cases require a direct-appeal court to apply a factual-sufficiency standard to the elements of the offense when properly requested to do so by a convicted defendant. *See Clewis*, 922 S.W.2d at 129 ("*Jackson* standard of review does not satisfy a noncapital defendant's right to an appellate review of fact questions") and at 129–31 ("When their jurisdiction to review fact questions is properly invoked, the courts of appeals cannot ignore constitutional and statutory mandates."); *Stone v. State*, 823 S.W.2d 375, 381 (Tex.App.-Austin 1992, pet. ref'd as untimely filed) (stating that it is "duty-bound to exercise the full extent of the constitutional grant of appellate jurisdiction when requested by the litigants").

sufficiency standard in criminal cases.[30] Our factual-sufficiency cases decided that Texas direct-appeal courts, which would include this Court in its role as a direct-appeal court in death-penalty cases, are required to apply a civil factual-sufficiency standard under their constitutional grant of general appellate jurisdiction to review "questions of fact," [31] as also codified in Article 44.25, Tex.Code Crim. Proc., which currently states that direct-appeal courts and this Court "may reverse the judgment in a criminal action, as well upon the law as upon the facts." [32] Our factual-sufficiency cases further noted that Articles 36.13 and 38.04, Tex.Code Crim. Proc., and their statutory predecessors, which "re-serve the fact-finding function to the jury," [33] have "peacefully coexisted with that appellate authority for at least a hundred and twenty-three years" and were meant "merely to allocate the fact-finding function at the trial level and do not purport to affect appellate review." *See Watson*, 204 S.W.3d at 409.[34] Also, according to our factual-sufficiency decisions, the "factual conclusivity clause" in Article V, Section 6(a), makes "the resolution of factual issues" by direct-appeal courts conclusive on this Court in nondeath-penalty cases and also "seems to presuppose that [a direct-appeal] court already possesses the power to conduct factual [sufficiency] review." *See Watson*, 204 S.W.3d at 412,

**30.** *See Watson*, 204 S.W.3d at 406–414; *Clewis*, 922 S.W.2d at 129–31; *Clewis*, 922 S.W.2d at 136–49 (Clinton, J., concurring); *Bigby v. State*, 892 S.W.2d at 870–75 (Tex.Cr. App.1994); *Watson*, 204 S.W.3d at 417–20 (Hervey, J., dissenting); *Watson*, 204 S.W.3d at 424–40 (Cochran, J., dissenting); *Clewis*, 922 S.W.2d at 151–55 (McCormick, P.J., dissenting).

**31.** *See* Tex. Const. Article V, § 5(a) (providing Texas Court of Criminal Appeals with final appellate jurisdiction "with such exceptions and under such regulation as may be provided in this Constitution or as prescribed by law"); Tex. Const Article V, § 6(a) (providing Courts of Appeals with appellate jurisdiction "under such restrictions and regulations as may be prescribed by law" and also providing that "the decision of said courts shall be conclusive on all questions of fact brought before them on appeal or error"); *Bigby v. State*, 892 S.W.2d at 871–72 (grant of general appellate jurisdiction authorizes review of "questions of fact" and "questions of law"); *Clewis*, 876 S.W.2d at 430 ("general grant of [appellate] jurisdiction includes the power to *review* questions of law *and fact* ") (emphasis in original).

**32.** *See Watson*, 204 S.W.3d at 407, 413–14; *Clewis*, 922 S.W.2d at 136–149 (Clinton, J., concurring); *Bigby*, 892 S.W.2d at 870–75.

**33.** *See* Article 36.13 (providing that "[u]nless otherwise provided in this Code, the jury is the exclusive judge of the facts"); Article 38.04 (providing that "jury, in all cases, is the exclusive judge of the facts proved, and of the weight to be given the testimony" subject to such exceptions not applicable here).

**34.** This is arguably inconsistent with Tex. R.App. Proc. 21.3(h), which permits a trial court to grant a new trial "when the verdict is contrary to the law and the evidence." *Compare Tibbs*, 397 So.2d at 1123 (discussing Florida criminal-procedural rule permitting trial court to grant new trial when the verdict is "contrary to law or the weight of the evidence"). In addition, in several decisions meant to "clarify" *Clewis*, this Court has not been consistent on whether Articles 36.13 and 38.04 apply to the appellate process. *See Watson*, 204 S.W.3d at 419 n. 12 (Hervey, J., dissenting) (noting that, in 1996 in *Clewis*, this Court stated that these provisions do not apply to the appellate process, but in 1997, in another case, this Court stated that they do apply to the appellate process, and in 2006, in *Watson*, this Court stated that they do not apply to the appellate process). We note that our decision in *Lancon* recognized that these provisions do apply to the appellate process when *Lancon* cited them for the proposition that in a factual-sufficiency review "the jury is the sole judge of what weight" to give the witness testimony. *See Lancon*, 253 S.W.3d at 705 and at 707 ("jury is the sole judge of a witness's credibility, and the weight to be given the testimony").

413–14, *Bigby*, 892 S.W.2d at 872–73.[35]

The dissenters in this Court's factual-sufficiency cases took the position that, even though direct-appeal courts may have the authority to apply this factual-sufficiency standard under their grant of general appellate jurisdiction, when the courts of appeals acquired criminal jurisdiction in 1981, the Legislature, pursuant to its constitutional authority in Article V, Sections 5(a) and 6(a), to regulate appellate jurisdiction, made significant changes to Article 44.25 that were carefully designed to ensure that direct-appeal courts defer to a jury's credibility and weight determinations.[36] The dissenters considered it significant that in 1981, when Article 44.25 was changed to its current version—permitting a case to be reversed only "upon the law as upon the facts"—its statutory predecessor provided that a case could be reversed "upon the law as upon the facts" and also "because the verdict is contrary to the evidence."[37] Before this, the statutory predecessor to Article 44.25 provided that a case could be reversed "upon the law as upon the facts" and also because "the verdict is contrary to the weight of the evidence."[38] The dissenters believed that the 1981 legislative changes to Article 44.25 indicated a legislative intent that direct-appeal courts should defer to a jury's credibility and weight determinations by expressly withdrawing the authority (that arguably had existed before 1981) of direct-appeal courts to reverse a judgment because the verdict is contrary to the weight of the evidence.[39]

Our decision in *Clewis* to adopt a civil factual-sufficiency standard was meant to "harmonize[ ] the criminal and civil jurisprudence of this State with regard to appellate review of questions of factual suffi-

**35.** It should be noted that this Court has decided that its review of a direct-appeal court's factual-sufficiency decision is limited by the factual-conclusivity clause to determining only whether the direct-appeal court properly applied "rules of law." *See Roberts*, 221 S.W.3d at 662–63; *Bigby*, 892 S.W.2d at 872 n. 3. This Court, however, has never decided that the factual-conclusivity clause limits this Court's jurisdiction to review a direct-appeal court's decision on other "questions of fact" or that it makes a direct-appeal court's decision on these "questions of fact" conclusive on this Court. *See, e.g., Carmouche v. State*, 10 S.W.3d 323, 331–33 (Tex. Cr.App.2000) (this Court overturned direct-appeal court's decision on "question of fact" regarding factual circumstances under which the police claimed that the defendant consented to be searched based on a videotape which contradicted the police version of the critical events). This, of course, is consistent with the plain language of Article 44.25, which states that this Court and the courts of appeals may reverse a judgment "upon the law as upon the facts," and with Section 22.225(a), TEX. GOV'T CODE, which makes a direct-appeal court's judgment "conclusive on the facts" only in civil cases. *See Clewis*, 876 S.W.2d at 430 n. 4 (noting that Article 44.25 confers "upon the court of criminal appeals the same fact jurisdiction given to the courts of appeals" but declining to "attribute power to the court of criminal appeals that it has expressly disavowed"); *Watson*, 204 S.W.3d at 437 (Cochran, J., dissenting) ("It would appear that, under article 44.25 (and all of its predecessor statutes), both the courts of appeals and the Court of Criminal Appeals have co-equal jurisdiction to reverse 'on the facts' as well as the law.") and at 439 n. 118. It would appear that the Legislature did not intend for a direct-appeal court's decision on a "question of fact" in criminal cases to be conclusive on this Court. *See id.; but see Watson*, 204 S.W.3d at 412; *Bigby*, 892 S.W.2d at 872 n. 3.

**36.** *See Watson*, 204 S.W.3d at 419–20 (Hervey, J., dissenting); *Clewis*, 922 S.W.2d at 153–54 (McCormick, P.J., dissenting).

**37.** *See Watson*, 204 S.W.3d at 407; *Bigby*, 892 S.W.2d at 874 n. 5.

**38.** *See Bigby*, 892 S.W.2d at 874 n. 5.

**39.** *See Watson*, 204 S.W.3d at 419–20 (Hervey, J., dissenting); *Clewis*, 922 S.W.2d at 153–54 (McCormick, P.J., dissenting).

ciency." *See Clewis*, 922 S.W.2d at 129. However, when *Clewis* was decided in 1996, the Texas Supreme Court had decided that direct-appeal courts were required to exercise a factual-sufficiency standard with "deferential standards of review." *See Roberts*, 221 S.W.3d at 664 n. 7; *Cropper v. Caterpillar Tractor Co.*, 754 S.W.2d 646, 651 (Tex.1988).[40] With its requirement that **all** of the evidence must be viewed under deferential standards to determine whether a jury's verdict is "manifestly unjust and clearly wrong," this civil factual-sufficiency standard that *Clewis* adopted for criminal cases was essentially the *Jackson v. Virginia* standard.

Thus, when this Court decided *Clewis* in 1996, direct-appeal courts were already harmoniously applying essentially the same standard of factual sufficiency in civil and criminal cases.[41] *Clewis'* main accomplishment, therefore, was to adopt for criminal cases another evidentiary-sufficiency standard that was essentially the *Jackson v. Virginia* standard and that direct-appeal courts had been applying for about 150 years. This, in large part, explains why it was inevitable that these two standards would eventually be recognized as indistinguishable. *See* Part I of this Opinion. The *Jackson v. Virginia* standard is consistent with well-settled evidentiary-sufficiency practice in this State and with a direct-appeal court's constitutional and statutory mandates to review "questions of law" and "questions of fact."[42]

40. *See also Jacobs–Cathey Co. v. Cockrum*, 947 S.W.2d 288, 295 (Tex.App.-Waco 1997, writ denied) (when reviewing court reviews factual sufficiency of the evidence in civil cases, "the reviewing court shall neither interfere with the jury's resolution of conflicts in the evidence nor pass on the weight and credibility of the witnesses' testimony" because, among other things, the trier of fact has "the opportunity to observe the demeanor of the witnesses and to weigh their testimony").

41. We further note that, since our 1996 decision in *Clewis*, the Texas Supreme Court, expressly relying on *Jackson v. Virginia*, modified its traditional appellate standards of "legal" and "factual" sufficiency in civil cases with a clear-and-convincing-evidence heightened burden of proof while also noting that the parameters of these standards "differ to some degree from those adopted by the Texas Court of Criminal Appeals." *See In re J.F.C.*, 96 S.W.3d 256, 264–67 (Tex. 2002); *see also Watson*, 204 S.W.3d at 445–46 n. 152 (Cochran, J., dissenting) (setting out verbatim these two standards and noting that "there is barely visible light" between these two standards and wondering "if this two-tier review will long endure in civil cases where the burden of proof is heightened"). These two standards are basically a *Jackson v. Virginia* standard modified to account for the clear-and-convincing-evidence heightened burden of proof. It, therefore, appears that civil appellate standards of "legal" and "factual" sufficiency are moving in the direction of essentially a *Jackson v. Virginia* standard as the burden of proof at trial increases. *See Watson*, 204 S.W.3d at 445–46 n.152 (Cochran, J., dissenting).

42. *See Clewis*, 876 S.W.2d at 429 n. 1 (discussing the "no evidence" and the "factually insufficient evidence" civil appellate standards of review and the confusion that can occur when "attempting to refer to 'legal sufficiency' in criminal cases") and at 438–39 ("Although characterized as a 'legal sufficiency' review and a 'question of law,' the *Jackson* standard necessarily encompasses a *factual* sufficiency review. If after reviewing the evidence, i.e., the facts, in the light most favorable to the verdict, a rational trier of fact could *not* have found the essential elements of the crime *beyond a reasonable doubt*, then the sufficiency challenge must be sustained and the defendant acquitted.") (emphasis in original); *see also Watson*, 204 S.W.3d at 437 (Cochran, J., dissenting) ("And, of course, both this Court and the courts of appeals have the authority to review 'the facts' as well as the law. If 'the facts' do not establish every element beyond a reasonable doubt, those 'facts' require an appellate court to acquit the defendant under *Jackson*."); *Clewis*, 922 S.W.2d at 157 (McCormick, P.J., dissenting) (when conviction is reversed under *Jackson*, it is reversed "upon the law as upon the facts" after the reviewing court has examined all the evidence, i.e., the facts).

■ The issue thus becomes whether direct-appeal courts' constitutional jurisdiction to review "questions of fact," as also codified in Article 44.25 authorizing direct-appeal courts to reverse a judgment "upon the facts," should now be construed for the first time to mandate direct-appeal courts to sit as "thirteenth jurors" in criminal cases contrary to 150 years of practice in civil and criminal cases. We decline to question over 150 years of criminal and civil jurisprudence in this State and construe constitutional and statutory mandates to review "questions of fact" to also require direct-appeal courts to sit as "thirteenth jurors" in criminal cases. *See also Clewis*, 876 S.W.2d at 431 ("Appellate fact jurisdiction ... should not be confused with the appellate standard of review required to exercise that fact jurisdiction. The state constitution, at most, says that an intermediate appellate court has conclusive fact *jurisdiction* in both civil and criminal cases. It does not purport to set out the *standard of review* required to exercise that fact jurisdiction.") (emphasis in original).[43]

We also note that *Watson* and *Clewis* relied on several cases, most notably the 1883 case of *Walker v. State*,[44] apparently for the proposition that the statutory predecessors to Article 44.25 required factual-sufficiency review that permits direct-appeal courts to sit as "thirteenth jurors." *Walker* is cited in both *Clewis* and *Watson* as a watershed case purportedly recognizing that the statutory predecessors to Article 44.25 required such a review.[45] It is not clear that cases such as *Walker* were applying factual-sufficiency review that permits a direct-appeal court to sit as a "thirteenth juror" in criminal cases since *Walker* "was fully consistent with the *Jackson* standard alone." *See Watson*, 204 S.W.3d at 428 (Cochran, J., dissenting) (*Walker* "was fully consistent with the *Jackson* standard alone" even though it "could be read to support the proposition that the appellate court felt that it had the authority to reverse a jury verdict even though the evidence was 'sufficient.' ").[46] We do not believe that cases such as *Walker* clearly support the proposition that Article 44.25 and its statutory predecessors mandate direct-appeal courts to sit as "thirteenth jurors" in criminal cases. *See also Watson*, 204 S.W.3d at 424–32 (Cochran, J., dissenting).[47] In addition, reading

43. It is, therefore, unnecessary in this case to revisit the issue of whether legislative activity in 1981 was meant to insure that direct-appeal courts would defer to the jury's credibility and weight determinations and not sit as "thirteenth jurors." *See Watson*, 204 S.W.3d at 419–20 (Hervey, J., dissenting); *Clewis*, 922 S.W.2d at 153–156 (McCormick, P.J., dissenting).

44. 14 Tex.Ct.App. 609 (1883).

45. *See Watson*, 204 S.W.3d at 407–09; *Clewis*, 922 S.W.2d at 138–39 (Clinton, J., concurring); *Watson*, 204 S.W.3d at 426–28 (Cochran, J., dissenting) ("most important case discussing sufficiency of the evidence was the court of appeals's 1883 decision in *Walker* ").

46. Another case cited in *Watson* apparently for the proposition that Article 44.25 and its statutory predecessors require a factual-suffi-

ciency review that permits direct-appeal courts to sit as "thirteenth jurors" is *Green v. State*, 97 Tex.Crim. 52, 260 S.W. 195 (1924). *See Watson*, 204 S.W.3d at 410. *Green*, however, is another case that, like *Walker*, is ambiguous on this point and appears to be really applying a *Jackson v. Virginia* standard. *See Green*, 260 S.W. at 196 ("Though the verdict should not be lightly annulled it is our duty to set it aside and order another trial **when the evidence viewed in its strongest light from the standpoint of the state,** fails to make guilt reasonably certain.") (emphasis supplied).

47. To the extent that *Walker* can be read to support this proposition, we note that *Walker* was relying on that portion of the statutory predecessor to Article 44.25 that permitted a reversal "**for the reason that the verdict is contrary to the weight of the evidence.**" *See Walker*, 14 Tex.Ct.App. at 629 (emphasis sup-

*Walker* to mandate direct-appeal courts to sit as "thirteenth jurors" would be inconsistent with the overwhelming weight of civil and criminal authority that direct-appeal courts should review a jury's verdict under deferential standards.

As the Court with final appellate jurisdiction in this State,[48] we decide that the *Jackson v. Virginia* standard is the only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the State is required to prove beyond a reasonable doubt. All other cases to the contrary, including *Clewis,* are overruled.

## V. Disposition of This Case

■ We must now decide how to dispose of this case. In light of our disposition of the State's first ground for review, it is unnecessary to address the State's second ground for review. And having decided that there is no meaningful distinction between a *Clewis* factual-sufficiency standard and a *Jackson v. Virginia* legal-sufficiency standard, we could decide that the court of appeals necessarily found that the evidence is legally insufficient to support appellant's conviction when it decided that the evidence is factually insufficient to support appellant's conviction. However, primarily because the "confusing" factual-sufficiency standard may have skewed a rigorous application of the *Jackson v. Virginia* standard by the court of appeals, we believe that it is appropriate to dispose of this case by sending it back to the court of appeals to reconsider the sufficiency of the evidence to support appellant's conviction under a proper application of the *Jackson v. Virginia* standard. *Cf. Tibbs,* 397 So.2d at 1125–26 (abandoning reversals based on weight of the evidence and stating that "[c]ases now pending on appeal in which a court has characterized the reversal as based on evidentiary weight should be reconsidered").

The judgment of the court of appeals is vacated, and the case is remanded there for further proceedings not inconsistent with this opinion.

COCHRAN J., filed a concurring opinion in which WOMACK, J., joined.

PRICE, J., filed a dissenting opinion in which MEYERS, JOHNSON, and Holcomb, JJ., joined.

WOMACK, J., concurred.

COCHRAN, J., concurring in which WOMACK, J., joined.

I adhere to my view that the 1996 judicial creation of the *"Clewis*[1] factual-sufficiency review was a well-intentioned but ultimately unworkable effort to incorporate civil standards of review on elements of a crime that must be proven beyond a reasonable doubt."[2]

---

plied). This, however, is the language that the Legislature deleted in 1981 when the courts of appeals acquired criminal jurisdiction. *See Bigby,* 892 S.W.2d at 874 n. 5 (discussing history of Article 44.25 and its statutory predecessors).

**48.** *See* Article V, § 5(a) (Court of Criminal Appeals "shall have final appellate jurisdiction coextensive with the limits of the state, and its determinations shall be final, in all criminal cases of whatever grade"); Interpretive Commentary to Article V, § 5(a) ("In defining the jurisdiction of the court of criminal appeals, this section confines its powers to the exercise of appellate jurisdiction in criminal matters exclusively. It thus has no civil jurisdiction, but it is the court of final jurisdiction in criminal matters.").

**1.** *Clewis v. State,* 922 S.W.2d 126 (1996).

**2.** *Watson v. State,* 204 S.W.3d 404, 421 (Tex. Crim.App.2006) (Cochran, J., dissenting).

## I.

### A. The Evidence in This Case Either Is or Is Not Legally Sufficient to Support a Conviction.

The evidence in this case is either sufficient to support appellant's conviction under the constitutionally-mandated *Jackson*[3] standard or it is not. It cannot be "semi-sufficient."

Appellant was charged with possession of cocaine with the intent to distribute it. At trial, he denied that the baggie containing 4.72 grams of cocaine and five ecstacy pills found in the pool table pocket return was his, although he admitted ownership of the baggie of marijuana that he tossed under that pool table. On appeal, he argued that the evidence was both legally and factually insufficient to prove that he possessed the cocaine with the intent to distribute it. The court of appeals found that the evidence was legally sufficient to support a finding, beyond a reasonable doubt, that appellant possessed the cocaine with the intent to distribute it. In doing so, it relied on a list of seven facts, beyond the mere amount of cocaine, that

supported the jury's guilty verdict.[4] But then, in finding the evidence factually insufficient to support a finding of intent to distribute, the majority set out a totally different list of facts that the record did not show: There was no evidence that (1) appellant was in a high crime area; (2) the cocaine was packaged especially for sale; (3) he was carrying a large amount of cash; or (4) he had drug-dealing paraphernalia on him.[5] The court used positive inferences for legal sufficiency (what the evidence did show) and then negative inferences for factual sufficiency (what the evidence did not show).

I agree that this is a close call on legal sufficiency, but I do not see how "missing" facts can transform the purportedly legally sufficient evidence into factually insufficient evidence. There is no higher standard than "proof beyond a reasonable doubt." If the evidence meets that standard, how can it fall short using a lower standard? Indeed, the Waco Court of Appeals may have had second thoughts itself about this question because it held, in a subsequent (but almost identical) case,

---

3. *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

4. *Brooks v. State,* No. 10-07-00309-CR, 2008 WL 4427266, at *4, 2008 Tex.App. LEXIS 7364, at *12 (Tex.App.-Waco 2008). The majority opinion in the court of appeals noted these additional facts:

   (1) both the bag of marihuana and the bag of cocaine were packaged in the same manner;
   (2) [appellant] was not in possession of any drug paraphernalia for either use or sale;
   (3) [the State's DEA expert] testified that users typically carry some type of heating element, such as a crack pipe, but dealers do not;
   (4) at the time of his arrest, [appellant] was not under the influence of a narcotic;
   (5) [appellant] has a previous conviction for possession with intent to deliver;

   (6) [appellant] attempted to evade capture and discarded contraband in the process; and
   (7) [appellant] was found in possession of three different types of drugs.
   *Id.* The majority did not analyze the probative value of these facts to establish appellant's intent or discuss what legitimate inferences, if any, might be drawn from them. It did not explain why the evidence was legally sufficient when it announced its conclusion.

5. *Id.* at *5, 2008 Tex.App. LEXIS 7364, at *13. Chief Justice Gray dissented, noting that the majority failed to acknowledge that there was "more evidence of intent to deliver than merely the amount of cocaine." *Id.* at *7, 2008 Tex.App. LEXIS 7364, at *19 (Gray, C.J., dissenting). He also noted that the majority did not "detail the evidence and clearly state why the evidence that is legally sufficient is nevertheless factually insufficient." *Id.* at *7, 2008 Tex.App. LEXIS 7364, at *20.

that the evidence was factually and legally sufficient.[6] If nothing else, these two cases demonstrate that the *Clewis* factual sufficiency review has led to random, inconsistent results, based primarily on "the luck of the draw."[7] This doctrine is not based on a sound logical or historical foundation, and it serves only to muddle criminal law. It should be overturned.

### B. Both Parties Agree That the Proper Issue Is Legal Sufficiency of the Evidence.

Fittingly, both appellant and the State agree that the proper issue in cases such as this is whether the evidence is *legally* sufficient. The State argues in its Petition for Discretionary Review, "Evidence that is factually insufficient due to its inherent weakness should always be legally insufficient; either the evidence is such that a rational juror could convict upon it or it is not, regardless of the light in which it is viewed."[8] Appellant "suggests that in this

situation (i.e. a question of intent), if the evidence is factually insufficient it must also be legally insufficient."[9] They are both correct: There is no "semi-sufficient" standard of review.

### II.

### A. Logic Requires a Single Standard of Sufficiency Review in Criminal Cases.

I have already set out my concerns about the intellectual legitimacy, historical authenticity, and appropriateness of the *Clewis* factual sufficiency review in Texas.[10] I now focus only upon the most important reason to overrule *Clewis*: Logic.

The attempt to impose Texas civil standards of a second-round factual sufficiency review is logically incompatible with the constitutionally mandated legal sufficiency review of criminal convictions that requires the State to prove all elements of a crime

---

6. *Guyton v. State*, No. 10-07-00070-CR, 2009 WL 290935, 2009 Tex.App. LEXIS 839 (Tex. App.-Waco, Feb. 6, 2009, pet.ref'd) (not designated for publication). In *Guyton*, the court of appeals originally reversed the conviction due to factual insufficiency, but, once the State filed a PDR, it reconsidered and held that the evidence was both legally and factually sufficient to support the defendant's conviction for possession of .40 grams of cocaine with the intent to distribute it. *Id.* at *3–4, 2009 Tex.App. LEXIS 839, at *9–13.

7. *See Watson*, 204 S.W.3d at 426 (Cochran, J., dissenting).

8. State's Petition for Discretionary Review at 9.

9. Appellant's Petition for Discretionary Review at 6. Appellant relies on several analogous federal cases in which the courts held that the evidence was legally insufficient to support a finding of "intent to distribute" a controlled substance that the defendant admittedly possessed. In these cases, the inference of intent to distribute was not a reason-

able one given the paucity of circumstantial evidence.

As appellant notes, the legal sufficiency standard of review is that required by the United States Constitution as set out in *Jackson v. Virginia*. That same standard is applied in every state and federal jurisdiction in America. It applies to all criminal convictions regardless of the type or degree of crime. This application of a single, constitutionally-mandated standard has led to the creation of an enormous body of "sufficiency of evidence" law and precedent across America that any judge or lawyer may easily access and apply to any given conviction here in Texas. It is a coherent body of law. It is objective and intellectually rigorous. It sets out appellate presumptions, permissible inferences, and specific criteria to use when assessing the legal sufficiency of the evidence. It does not rely upon subjective notions of "shocking the conscience" of individual appellate judges, striking them as "manifestly unjust," or seeming just plain "wrong."

10. *See Watson*, 204 S.W.3d at 421–26.

beyond a reasonable doubt. Piling a factual sufficiency standard of review that was developed for civil trials employing a preponderance-of-the-evidence standard of proof atop a legal sufficiency standard of review that was developed for criminal trials employing a beyond-a-reasonable-doubt standard of proof does not work. That is why this Court has so frequently tinkered with the *Clewis* formulation, and why we have always been unsuccessful.

The *Clewis* doctrine of re-reviewing the sufficiency of the evidence after the appellate court has already held that the evidence satisfies the highest standard of proof possible—beyond a reasonable doubt—to decide if it is nonetheless factually sufficient is internally inconsistent. If the evidence suffices to prove guilt beyond a reasonable doubt, and it supports a rational, reasonable verdict, as required under *Jackson*, that evidence cannot logically be so lacking in probative value as to make the jury's verdict "manifestly unjust" under the vague and subjective civil-law factual-sufficiency standard. To declare the evidence factually insufficient necessarily turns an appellate judge, viewing only the cold written record, into a self-appointed thirteenth juror with absolute veto power over the twelve citizens who actually saw the witnesses, heard the evidence, and reached a rational, reasonable verdict. The United States Supreme Court recognized this in *Tibbs v. Florida*,[11] as did the Florida Supreme Court when it judicially jettisoned factual-sufficiency review in that same case.[12]

## B. Legally Sufficient Evidence in a Criminal Trial.

For more than 150 years, Texas appellate courts reviewed the sufficiency of the evidence in Texas criminal cases under a single standard (although the precise wording varied), taking into account both the facts that were proven at trial and the law applicable to the particular offense.[13] This Court (and the intermediate courts of appeals once they were given jurisdiction over the direct appeal of criminal cases in 1981) reviewed the facts proven in the light most favorable to the verdict, giving great deference to the jury's credibility and weight determinations. But we did not hesitate to reverse a conviction if the evidence failed to prove a defendant's guilt "with reasonable certainty," or "beyond a reasonable doubt."[14] There were never two distinct "sufficiency of the evidence" hurdles in Texas criminal appellate review.[15]

11. 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982) (stating that an appellate reversal for factually insufficiency, "unlike a reversal based on insufficient evidence, does not mean that acquittal was the only proper verdict. Instead, the appellate court sits as a 'thirteenth juror' and disagrees with the jury's resolution of the conflicting testimony. This difference of opinion no more signifies acquittal than does a disagreement among the jurors themselves.... [A]n appellate court's disagreement with the jurors' weighing of the evidence does not require the special deference accorded verdicts of acquittal.").

12. *Tibbs v. State*, 397 So.2d 1120, 1123 (Fla. 1981) (rejecting its former factual sufficiency review because "the concern on appeal must be whether, after all conflicts in the evidence and all reasonable inferences therefrom have been resolved in favor of the verdict on appeal, there is substantial, competent evidence to support the verdict and judgment. Legal sufficiency alone, as opposed to evidentiary weight, is the appropriate concern of an appellate tribunal.") (footnote omitted).

13. *See Watson*, 204 S.W.3d at 424–26 (Cochran, J., dissenting) (discussing the history of appellate review of sufficiency of the evidence in Texas).

14. *Id.*

15. *Id.* at 426 (collecting and discussing Texas criminal cases from 1841 forward and con-

### 1. The constitutionally required Jackson standard.

In 1979, the United States Supreme Court delivered its opinion in *Jackson v. Virginia*,[16] and set the national standard for review of the sufficiency of evidence under the Due Process Clause of the federal constitution. In all criminal trials, state and federal, the government must produce "sufficient evidence to justify a rational trier of the facts to find guilt beyond a reasonable doubt."[17] The Court explicitly rejected the "no evidence" standard of review that it had applied nineteen years earlier in *Thompson v. Louisville*.[18]

In *Jackson*, the Court explained that the *Thompson* "no evidence" review "secures to an accused the most elemental of due process rights: freedom from a wholly arbitrary deprivation of liberty[,]"[19] but that standard is inadequate for "a question of evidentiary 'sufficiency.' "[20] Instead, the correct standard must incorporate the prosecution's burden of proof-beyond a reasonable doubt-in a due-process review. The Court noted that a " 'reasonable doubt' has often been described as one 'based on reason which arises from the evidence or lack of evidence.' "[21]

A reasonable doubt might arise because the verdict is manifestly against the great weight and preponderance of the credible evidence or because there is nothing more than a mere scintilla of evidence to support some element of the offense. But, of course, the reviewing court does not "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt."[22] Rather, it must give "full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts."[23] Thus, "*all of the evidence* is to be considered in the light most favorable to the prosecution" because the reviewing court may impinge upon " 'jury' discretion only to the extent necessary to guarantee the fundamental protection of due process of law."[24]

Therefore, after 1979, Texas courts were prohibited from applying a "no evidence"

cluding, "Until *Clewis* in 1996, this Court had consistently used a single standard (although the precise phrasing varied) and reviewed the evidence in the light most favorable to the factfinder, giving great deference to the jury's credibility and weight determinations.").

16. 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

17. *Id.* at 312–13, 99 S.Ct. 2781.

18. 362 U.S. 199, 199, 80 S.Ct. 624, 4 L.Ed.2d 654 (1960) (stating that the "ultimate question presented to us is whether the charges against petitioner were so totally devoid of evidentiary support as to render his conviction unconstitutional under the Due Process Clause of the Fourteenth Amendment. Decision of this question turns not on the sufficiency of the evidence, but on whether this conviction rests upon any evidence at all.").

19. *Jackson*, 443 U.S. at 314, 99 S.Ct. 2781.

20. *Id.* The Supreme Court explained that a "no evidence" standard does not "protect against misapplications of the constitutional standard of reasonable doubt" because a "no evidence" standard is satisfied by a "mere modicum" of evidence. "But it could not seriously be argued that such a 'modicum' of evidence could by itself rationally support a conviction beyond a reasonable doubt." *Id.* at 320, 99 S.Ct. 2781. Under a "no evidence" standard, a reviewing court would affirm the judgment if any evidence supported the conviction. *See Gollihar v. State*, 46 S.W.3d 243, 246 n. 3 (Tex.Crim.App.2001) (citing *Thompson*, 362 U.S. at 199, 80 S.Ct. 624).

21. *Id.* at 318 n. 9, 99 S.Ct. 2781.

22. *Id.* at 318–19, 99 S.Ct. 2781 (citation omitted).

23. *Id.* at 319, 99 S.Ct. 2781.

24. *Id.*

standard of review to a legal-sufficiency challenge because that standard affords "inadequate protection against potential misapplication of the reasonable-doubt standard" in criminal cases.[25] In 1989, we explained, "Adherence to the no evidence standard is now, and has been for the last decade, expressly forbidden by *Jackson.* It is no longer permissible to merely quote the *Jackson* standard and then to turn around and apply the *Thompson* no evidence standard as we have historically done."[26]

*2. Legal sufficiency in criminal cases is judged by the quality, not the quantity, of evidence supporting the accuracy of the verdict.*

Legal sufficiency of the evidence is a test of adequacy, not mere quantity. Sufficient evidence is "such evidence, in character, weight, or amount, as will legally justify the judicial or official action demanded."[27] In criminal cases, only that evidence which is sufficient in character, weight, and amount to justify a factfinder in concluding that every element of the offense has been proven beyond a reasonable doubt is adequate to support a conviction. There is no higher burden of proof in any trial, criminal or civil, and there is no higher standard of appellate review than the standard mandated by *Jackson.* All civil burdens of proof and standards of appellate review are lesser standards than that mandated by *Jackson.*

Indeed, the Supreme Court explicitly held in *In re Winship,*[28] that a juvenile could not constitutionally be adjudicated under the civil standards of proof (or appellate review) of preponderance of the evidence.[29] The Court noted that " 'the preponderance test is susceptible to the misinterpretation that it calls on the trier of fact merely to perform an abstract weighing of the evidence in order to determine which side has produced the greater quantum, without regard to its effect in convincing his mind of the truth of the proposition asserted.' "[30]

As Justice Harlan explained in his *Winship* concurrence, although "the phrases 'preponderance of the evidence' and 'proof beyond a reasonable doubt' are quantitatively imprecise, they do communicate to the finder of fact different notions concerning the degree of confidence he is expected to have in the correctness of his factual conclusions."[31] Justice Harlan noted that "[t]he preponderance test has been criticized, justifiably in my view, when it is read as asking the trier of fact to weigh in some objective sense the quantity of evidence submitted by each side rather than asking him to decide what he believes most probably happened."[32] Indeed, that is precisely why the standard of proof and

---

**25.** *Gollihar v. State,* 46 S.W.3d 243, 246 n. 4 (Tex.Crim.App.2001).

**26.** *Butler v. State,* 769 S.W.2d 234, 239 (Tex.Crim.App.1989) (en banc), *overruled on other grounds by Geesa v. State,* 820 S.W.2d 154 (Tex.Crim.App.1991).

**27.** Black's Law Dictionary 1285 (5th ed.1979).

**28.** 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970).

**29.** *Id.* at 368, 90 S.Ct. 1068.

**30.** *Id.* at 367–68, 90 S.Ct. 1068 (quoting Dorsen & Resneck, *In Re Gault and the Future of Juvenile Law,* 1 Fam. L. Quarterly No. 4, 26–27 (1967)) (rejecting the lower court's suggestion that there is only a " 'tenuous difference' " between the reasonable-doubt and preponderance standards).

**31.** *Id.* at 370, 90 S.Ct. 1068 (Harlan, J., concurring).

**32.** *Id.* at 371 n. 3, 90 S.Ct. 1068 (citing J. MAGUIRE, EVIDENCE, COMMON SENSE AND COMMON LAW 180 (1947)).

review in criminal cases has been expressed, not by the quantity of evidence produced or how it might be weighed when viewed neutrally, but rather by the quality of the evidence and the level of certainty it engenders in the factfinder's mind.

Legal sufficiency of the evidence in a criminal proceeding may be divided into two zones: evidence of such sufficient strength, character, and credibility to engender certainty beyond a reasonable doubt in the reasonable factfinder's mind and evidence that lacks that strength.[33] Appellate review of a jury's verdict of criminal conviction focuses solely on that "either-or" character of evidentiary sufficiency because a defendant is entitled to an acquittal if the evidence lacks that strength.

## C. Texas Civil Standards of Review.

Texas is considered a "hold-out" state by having a two-tiered standard of appellate review for civil cases, although commentators state that "recent decisions hint that there is support for assimilation into the single standard of review used in most jurisdictions."[34] It has long been acknowledged that "[f]ew issues of Texas law have created more confusion or spawned more appellate litigation than the treatment of 'no evidence' and 'insufficient evidence' points of error" in civil cases.[35] The difficulty in distinguishing these two types of claims—which require dramatically different results—is that appellate courts have little guidance except their own intuition to guide them.[36]

### 1. The "five zone" review for legal and factual sufficiency.

Traditionally, Texas appellate courts have employed a five-zone review of civil verdicts when the burden of proof at trial is that of "preponderance of the evidence."[37] In his much cited law review article, Justice Calvert distinguished those five zones and defined them.[38]

**33.** That does not mean, of course, that every factfinder or every appellate judge need agree that the evidence in a particular case is legally sufficient. As the Supreme Court explained in *Johnson v. Louisiana*, 406 U.S. 356, 92 S.Ct. 1620, 32 L.Ed.2d 152 (1972):

In our view disagreement of three jurors does not alone establish reasonable doubt, particularly when such a heavy majority of the jury, after having considered the dissenters' views, remains convinced of guilt. That rational men disagree is not in itself equivalent to a failure of proof by the State, nor does it indicate infidelity to the reasonable-doubt standard. Jury verdicts finding guilt beyond a reasonable doubt are regularly sustained even though the evidence was such that the jury would have been justified in having a reasonable doubt, even though the trial judge might not have reached the same conclusion as the jury, and even though appellate judges are closely divided on the issue whether there was sufficient evidence to support a conviction. *Id.* at 362–63, 92 S.Ct. 1620 (citations omitted). The United States Supreme Court trusts juries when they reach a rational verdict even

though those same justices, the individual trial judge, or appellate judges may be closely divided on the issue of whether they believe there was sufficient evidence to support a conviction.

**34.** W. Wendall Hall & Mark Emery, *The Texas Hold Out: Trends in the Review of Civil and Criminal Jury Verdicts*, 49 S. Tex. L.Rev. 539, 540 (2008).

**35.** William Powers, Jr. & Jack Ratliff, *Another Look at "No Evidence" and "Insufficient Evidence,"* 69 Tex. L.Rev. 515, 516 (1991).

**36.** *Id.* at 525.

**37.** *See id.* at 517–18 (discussing and using the concept of "a five zoned spectrum, with the strength of the proponent's evidence increasing in each successive zone").

**38.** One might visualize these five zones as laid out on an imaginary football field, starting from the left-hand goal line of the party with the burden of proof. Zone 1, the "no evidence" zone, starts at this goal line and, as

## 2. Zone 1—"no evidence."

Zone 1 is the "no evidence" zone, similar to the old legal sufficiency standard rejected by the Supreme Court in *Jackson* for criminal cases. A "no evidence" challenge by the party without the burden of proof in a civil case may be sustained only when:

- There is a complete lack of evidence of some element of a claim or defense;

- The evidence offered at trial is inadmissible under the rules of law or of evidence and thus cannot be given any evidentiary value on appeal;

- There is no more than a "mere scintilla" of evidence to prove some essential fact of either the claim or defense;[39] or

- The evidence conclusively demonstrates the opposite of the essential fact.[40]

If the appellate court finds "no evidence" to support the verdict, the evidence is legally insufficient, and the opponent is entitled to a judgment in his favor as a matter of law.[41]

## 3. Zone 2—"factually insufficient evidence."

In zone 2, the party with the burden of proof has offered some evidence in support of his claim or defense and the case is allowed to go to the jury for a verdict. But the evidence supporting the jury's verdict, while more than a "mere scintilla," is slim indeed.[42] In this scenario, the appellate court may find that it is "factually

the evidence supporting a vital fact or claim steadily increases, the zones march down the field until zone 5, "conclusive evidence," which is at the opposing party's goal line. The 50 yard line would roughly correspond to the line which must be crossed by the party with the burden of proof by the "preponderance of the evidence," leaving a "zone of reasonable disagreement" on either side of the midline.

39. Robert W. Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error*, 38 Tex. L.Rev. 361, 363 (1960). Justice Calvert explained the scintilla rule as follows:

[W]hen the evidence offered to prove a vital fact is so weak as to do no more than create a mere surmise or suspicion of its existence, the evidence is, in legal effect, no evidence, and will not support a verdict or judgment. The scintilla rule cannot apply when there is direct evidence of a vital fact; it applies only when the vital fact must be inferred from other relevant facts and circumstances which are proved. If the inference is not a reasonable one a "no evidence" point should be sustained. It follows that "no evidence" points based on the scintilla rule require a careful analysis of the facts proved for the purpose of determining whether the vital fact may be reasonably inferred.

*Id.* (footnotes omitted).

40. *Id.* at 362–63; *see also Merrell Dow Pharmaceuticals, Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex.1997); William V. Dorsaneo, III, et al., Texas Litigation Guide § 146.03[6][e][ii][A] (2007).

41. *Havner*, 953 S.W.2d at 730. Justice Calvert explained that, in deciding "no evidence" points, the appellate court views the evidence in the light most favorable to the verdict and considers only that evidence and inferences that support the verdict while ignoring all evidence and inferences that are contrary to the verdict. Calvert, 38 Tex L.Rev. at 364.

42. According to Justice Calvert, "if the evidence supporting the finding is so uncertain, inconsistent, improbable, or unbelievable that, although constituting some evidence of probative force when considered in its most favorable light in support of the finding, it would nevertheless be clearly unjust to permit the judgment to stand." Calvert, 38 Tex. L.Rev. at 367. Justice Calvert appropriately viewed the evidence "in its most favorable light in support of the finding" in assessing factual sufficiency; he did not view it in a "neutral light." I have found no Texas Supreme Court case that has viewed the evidence "in a neutral light" when addressing factual sufficiency claims.

insufficient," but it must carefully set out all of the evidence supporting the verdict and explain why the evidence is nonetheless insufficient.[43] This challenge is always brought by the party without the burden of proof.[44] The rationale for allowing the party (who prevailed at trial but was found by the appellate court to have produced insufficient evidence) to try again in a second trial is "that there is available to the appellee other evidence of the vital fact which will support a finding in his favor and it would work an injustice to cut off his right to produce it." [45] The appellate court assumes that the party who had the burden of proof and who originally prevailed may be able to produce additional evidence at a second trial, evidence that he failed to offer at the first trial.[46]

### 4. Zone 3—"zone of reasonable disagreement."

Zone 3, the zone of reasonable disagreement, is the great middle ground, in which a verdict will be upheld for either the party with the burden of proof or the opposing party as there is conflicting evidence or inferences on either side of the vital fact issue or issues, but the jury's verdict is reasonable and does not "shock the conscience," nor it is not so "clearly unjust" to indicate obvious bias.[47]

### 5. Zone 4—"great weight and preponderance."

In zone 4, the party with the burden of proof has offered significant evidence to support the claim or defense; the great weight and preponderance of the credible evidence supports his position.[48] However,

**43.** Justice Calvert explains that, in this zone 2 scenario, the appellate court may not find that the evidence is "against the great weight and preponderance of the evidence because there is no evidence of the nonexistence of the fact." Calvert, 38 Tex. L.Rev. at 366. That is, when reviewing an "insufficient evidence" point, the appellate court looks only to the evidence that supports the vital fact and determines that this evidence is simply too meager to support a finding of its existence by a preponderance of the evidence. *Id.*

**44.** *See* note 49 *infra.*

**45.** *Id.* at 370.

**46.** *Id.* ("By producing the evidence on retrial the party has fair assurance that a finding of the existence of the vital fact will be permitted to stand."). Strangely, this same rule does not apply for legally insufficient evidence because "[p]resumptively, at least, all of the evidence available to the appellee has been introduced." *Id.* Justice Calvert did not explain why a party who produced no evidence of a vital fact at the first trial is not entitled to a second bite at the apple, while a party who offered some, but factually insufficient, evidence would be able to produce more evidence and thus is entitled to a second bite at the apple.

**47.** *Id.*

**48.** Texas courts usually use the short-hand term "great weight of the evidence," but the Texas Supreme Court occasionally reiterates that it is, in reality, the great weight of the *credible* evidence that it is referring to. Quality, not mere quantity, has been its historical determining factor. *See, e.g., Dawson v. St. Louis Expanded Metal Fireproofing Co.,* 94 Tex. 424, 61 S.W. 118, 119 (1901) ("It was within the power of [the court of civil appeals] to disregard a finding of fact by the jury if contrary to the great weight of the credible testimony, and in effect to set aside the finding and to remand the cause, and we understand them to mean that under the facts as found by them under the evidence, there was no negligence."); *McDonald v. New York Cent. Mut. Fire Ins. Co.,* 380 S.W.2d 545, 548 (Tex.1964) ("[T]he insured does not raise in the Court of Civil Appeals the point of 'insufficient evidence' to support the jury findings or the point that the findings are against 'the great weight and preponderance' of the credible evidence"); *Darryl v. Ford Motor Co.,* 440 S.W.2d 630, 633 (Tex.1969) ("Nowhere in the amended motion for new trial did the respondent, Ford Motor Company, state that the evidence supporting the jury answers to any specific special issue was either insufficient or against the great weight of the credible evi-

the jury has returned a verdict in favor of the opposing party—the party without the burden of proof. In this scenario, the party with the burden of proof may challenge the result, claiming that the verdict is "against the great weight and preponderance of the evidence."[49] In this "against the great weight and preponderance" scenario, all of the evidence, both pro and con, is set out, and the appellate court must explain why the verdict is against the great weight and preponderance of the evidence.[50]

### 6. Zone 5—"conclusive evidence."

At the opposite end of the spectrum from zone 1 is zone 5—"conclusive evi-

dence"—in which the party with the burden of proof has established conclusively, or as a matter of law, that he is entitled to a judgment in his favor because the opponent has offered no evidence in opposition and the proponent has offered sufficient evidence of the vital fact or claim.

### 7. The Texas Supreme Court's Reformulation of Legal Sufficiency.

Although this five-zone theory has been the traditional formulation of civil legal and factual sufficiency standards in civil cases, in 2005, the Texas Supreme Court articulated a new formulation of the test for legal sufficiency review in *City of Kel-*

dence"); *see also In Re G.A.T.*, 16 S.W.3d 818, 829 (Tex.App.-Houston [14th Dist.] 2000, pet. denied) ("The evidence shows that the verdict was not contrary to the great weight of the credible evidence."); *Town & Country Mobile Homes, Inc. v. Bilyeu*, 694 S.W.2d 651, 656 (Tex.App.-Fort Worth 1985, no writ) ("In considering an 'insufficient evidence' point, we must remain cognizant of the fact that it is for the jury, as the trier of fact, to judge the credibility of the witnesses, to assign the weight to be given their testimony, and to resolve any conflicts or inconsistencies in the testimony. This Court may not substitute its judgment for that of the jury if the challenged finding is supported by some evidence of probative value and is not against the great weight and preponderance of the evidence.") (citation omitted).

49. *See* William Powers, Jr. & Jack Ratliff, 69 Tex. L.Rev. at 518–19 ("When the evidence falls into zone 2, the proper terminology is that there is 'insufficient evidence' or 'factually insufficient evidence' to support an affirmative finding. In zone 4, the clearest terminology is that a finding contrary to the evidence is against the 'great weight and preponderance of the evidence,' although this terminology is occasionally (and we think confusingly) used to refer to evidence in zone 2. Despite the differences between zones 2 and 4, attacks on jury findings in these zones are usually called 'factual sufficiency' points. The preferred terminology has the proponent [the party with the burden of proof] claim that an unfavorable (negative) finding should be set

aside because it is 'contrary to the great weight and preponderance of the evidence,' and has the opponent [the party without the burden of proof] claim that an unfavorable (affirmative) finding was based on 'insufficient evidence.' ") (footnotes omitted); *see also* Dorsaneo, Texas Litigation Guide § 146.03[6][e][ii][C] ("A party who attacks the factual sufficiency of an adverse finding on an issue on which the party has the burden of proof must demonstrate on appeal that the adverse finding is against the great weight and preponderance of the evidence.").

50. *See Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex.1986) ("In order that this court may in the future determine if a correct standard of review of factual insufficiency points has been utilized, courts of appeals, when reversing on insufficiency grounds, should, in their opinions, detail the evidence relevant to the issue in consideration and clearly state why the jury's finding is factually insufficient or is so against the great weight and preponderance as to be manifestly unjust; why it shocks the conscience; or clearly demonstrates bias. Further, those courts, in their opinions, should state in what regard the contrary evidence greatly outweighs the evidence in support of the verdict. It is only in this way that we will be able to determine if the requirements of *In Re King's Estate* [244 S.W.2d 660 (Tex.1951)], have been satisfied.").

*ler v. Wilson:*[51]

> The final test for legal sufficiency must always be whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review. Whether a reviewing court begins by considering all the evidence or only the evidence supporting the verdict, legal-sufficiency review in the proper light must credit favorable evidence if reasonable jurors could, and disregard contrary evidence unless reasonable jurors could not.[52]

Thus, when reasonable jurors could resolve conflicting evidence either way, an appellate court must assume that jurors resolved all such conflicts in accord with their verdict, and when the evidence supports conflicting inferences, the court must assume that jurors made all inferences in favor of the verdict and disregard other possible inferences.[53] "If the evidence at trial would enable reasonable and fair-minded people to differ in their conclusions, then jurors must be allowed to do so. A reviewing court cannot substitute its judgment for that of the trier-of-fact, so long as the evidence falls within this zone of reasonable disagreement."[54] The appellate court does not view the evidence in a neutral light, but rather "in the light favorable to the verdict,"[55] just as is done in criminal cases under *Jackson* and in Texas civil cases under a factual sufficiency review. Under this formulation, zone 3 (the zone of "reasonable disagreement") would seem to have increased considerably in size, while zones 2 and 4 (those of "factual insufficiency" and "against the great weight and preponderance") have diminished as a verdict that is outside the zone of reasonable disagreement would seem to be within the zone of legally insufficient evidence.[56]

Some commentators have noted that this new formulation of legal sufficiency has virtually merged the Texas legal sufficiency standard with that of factual sufficiency in civil cases.[57] And it has brought Texas

---

**51.** *168 S.W.3d 802 (Tex.2005).*

**52.** *Id.* at 827.

**53.** *See id.* at 818–21.

**54.** *Id.* at 822 (footnote omitted). In *City of Keller,* the Supreme Court also described three kinds of evidence that *must* be disregarded when conducting a legal sufficiency analysis: (1) credibility evidence; (2) conflicting evidence; and (3) conflicting inferences. *Id.* at 819–22. Thus, witness credibility in civil cases, as in criminal cases, is solely the prerogative of the factfinder. An appellate court may not discount a witness's testimony as being, in its view, less credible than another witness's. Furthermore, the appellate court may not choose between two conflicting inferences if the evidence would reasonably support either one. "It is widely recognized that one of the most important attributes of the right to jury trial is the ability of juries to draw, from circumstantial evidence, inferences that cannot be set aside or second-guessed by reviewing courts merely because the reviewers would have reached a different factual conclusion." William V. Dorsaneo, III, *Changing the Balance of Power: Juries, the Courts, and the Legislature,* Practice Before the Supreme Court 5 (State Bar of Texas 2004).

**55.** *City of Keller,* 168 S.W.3d at 807.

**56.** *See City of Keller,* 168 S.W.3d at 827–28 ("'The rule as generally stated is that if reasonable minds cannot differ from the conclusion that the evidence lacks probative force it will be held to be the legal equivalent of no evidence.'") (quoting Calvert, 38 Tex. L.Rev. at 364).

**57.** *See* W. Wendall Hall & Mark Emery, 49 S.Tex. L.Rev. at 559 ("Some may conclude that *City of Keller* only addresses legal sufficiency challenges, but the reasonable juror standard seems to make the distinction between legal and factual sufficiency mean little."); *id.* at 562 (noting that under the *City of Keller* "reasonable and fair-minded juror" standard, the Supreme Court may avoid the "yo-yo effect" of reversing and remanding

civil standards "more closely in line with federal standards for legal sufficiency review." [58] These commentators argue that the language of the "reasonable juror" standard "provides a cloak for the reasoning of judges, rather than precision in reasoning." [59] They contend that the *City of Keller* standard "leaves considerable leeway for an appellate court to intercept a jury's verdict when it feels motivated to do so." [60] These commentators complain that the "reasonable juror" standard is too flexible and subjective,[61] apparently preferring the purportedly more objective standard of "shocks the conscience" or "manifestly unjust." One can certainly agree with their ultimate conclusion however, that appellate courts should make "a firm rededication to a jurisprudence of restraint and standards of review that recognize the fundamental right to trial by jury and a concomitant hard-minded application of standards of review." [62] Particularly in Texas, the most jury-deferential state in the nation,[63] appellate courts must defer to a "reasonable" jury verdict in both civil and criminal cases.

## D. The Criminal Legal Sufficiency Standard Cannot Be Harmonized with the Civil Factual Sufficiency Standard.

### 1. Clewis *is a chimera.*

In *Clewis,* this Court attempted to superimpose the five-zone civil standard of review, predicated upon trials in which the burden of proof is by a preponderance of the evidence upon the two-zone criminal standard of review that requires proof beyond a reasonable doubt.[64] Visualizing the five-zone civil standard ("no evidence," "insufficient evidence," "zone of reasonable disagreement," "the great weight and preponderance of the evidence," and "conclusive evidence") as a football field with the "no evidence" zone at one end and with each zone comprised of an ever greater quantum of evidence offered by the party with the burden of proof until the "conclusive evidence" zone at the other end, reviewing courts are required to uphold as factually sufficient any verdict in favor of the party with the burden of proof that is at least within the third zone, that of reasonable disagreement. But in assessing the legal sufficiency of evidence in a criminal case, the State's evidence must be persuasive enough to almost make a touchdown; reaching the midfield is never enough to meet the "beyond a reasonable doubt" standard.

In a civil case, if the jury returns a verdict in favor of the party that did not have the burden of proof (usually the defendant), but that verdict is determined by the appellate court to be against the great weight and preponderance of the evidence offered by the party that did have the

---

cases for factual insufficiency review and instead render judgment because the verdict is unreasonable and therefore the evidence is legally insufficient).

**58.** *Id.* at 556.

**59.** *Id.* at 600.

**60.** Lonny S. Hoffman, *Harmar and the Ever-Expanding Scope of Legal Sufficiency Review,* 49 S. Tex. L.Rev. 611, 614 (2008).

**61.** *Id.*

**62.** *See* W. Wendall Hall & Mark Emery, 49 S. Tex. L.Rev. at 610.

**63.** *See Watson,* 204 S.W.3d at 429 n. 47 (Cochran, J., dissenting); *see also* William Powers, Jr., *Judge and Jury in the Texas Supreme Court,* 75 Tex. L.Rev. 1699, 1699 n.3 (1997) ("A hallmark of [the] entire body of law [regarding legal and factual sufficiency claims in civil cases] however, is extraordinary deference to juries.").

**64.** *See Clewis,* 922 S.W.2d at 129.

burden of proof (usually the plaintiff), then the appellate court may reverse the judgment and remand for a new trial. This gives the plaintiff a second opportunity to prove his case before a new jury, after the first jury had rejected his claim although he had originally produced "the great weight and preponderance of the evidence" to support its claim. That scenario would not generally arise [65] in criminal cases because if the jury returns a verdict favoring the party without the burden of proof (the defendant), there will be no appeal because the State may not appeal an acquittal.

Similarly, if the party with the burden of proof in a civil trial (usually the plaintiff) obtains a jury verdict in its favor, but an appellate court determines that there is insufficient evidence, even when viewed in the light most favorable to the verdict,[66] to reach "the zone of reasonable disagreement," then the appellate court may reverse the jury verdict and remand for a new trial. That scenario also would not arise in criminal cases because if the State's evidence is so weak in strength, character, and credibility that it does not reach the level of "the zone of reasonable disagreement," then it most assuredly does not meet the "beyond a reasonable doubt" standard of legal sufficiency required in all criminal cases. Such a lack of evidentiary support is not merely factually insufficient, it is legally insufficient, and the defendant cannot be required to undergo a second trial.

What this Court did in *Clewis* was adopt the language of Texas civil factual sufficiency review without first determining whether there was a proper fit between those civil standards of review and the differing evidentiary standards of proof in civil and criminal cases. This mistake was quite understandable when *Clewis* was decided in 1996 because this Court had recently and properly adopted the Texas civil standards of legal and factual sufficiency for those few instances in criminal cases in which the burden of proof is a preponderance of the evidence, as occurs with affirmative defenses.[67] But as appellate courts attempted to reconcile the five-zone civil factual-sufficiency standards with the heightened burden of proof in criminal cases in which the State is required to prove every element beyond a reasonable doubt, we began to realize that this civil standard of review did not align with the criminal burden of proof. And we tinkered and tinkered with various reformulations of this "factual sufficiency" standard of review in criminal cases in a vain attempt to harmonize them.[68]

65. This situation does arise in those instances in which the defendant bears the burden of production and persuasion for affirmative defenses. *See* note 67 *infra*.

66. *See* note 42 *supra*.

67. *See, e.g., Meraz v. State*, 785 S.W.2d 146, 154 (Tex.Crim.App.1990) (applying the civil standards of factual review of "against the great weight and preponderance of the evidence" in a case in which the defendant appealed the jury's rejection of his plea of incompetence because the defendant had the burden to prove incompetence by a preponderance of the evidence); *Bigby v. State*, 892 S.W.2d 864, 875 (Tex.Crim.App.1994) (applying the civil standards of factual review be-

cause defendant had both the burden of production and persuasion for his affirmative defense of insanity).

68. *See Jones v. State*, 944 S.W.2d 642, 647–49 (Tex.Crim.App.1996) (deciding that a factual-sufficiency review requires the appellate court to review all of the evidence, not just the evidence that supports a verdict; rejecting capital murder defendant's factual sufficiency claim because there was conflicting evidence of whether he intended to shoot the murder victim); *Cain v. State*, 958 S.W.2d 404, 407–09 (Tex.Crim.App.1997) (reversing lower court's holding of factual insufficiency because that court failed to defer to the jury's determination of witness credibility); *Johnson*

2. *Clewis and* Watson *relied upon a false premise that evidence should be viewed in a neutral light when conducting a factual sufficiency review.*

In *Watson v. State,*[69] we stated that the only difference between a factual-sufficiency review and a legal-sufficiency review is that, under the former, an appellate court should view the evidence in a neutral light, rather than in the light most favorable to the verdict.[70] But it is a strange distinction that ignores the quality or credibility of evidence, and it is one that has never been a part of Texas factual-sufficiency review in civil cases.[71] Instead, it was created by the Austin Court of Appeals in *Stone v. State,*[72] and simply imported,

*v. State,* 23 S.W.3d 1, 5–8 (Tex.Crim.App. 2000) (upholding lower court's finding of factual insufficiency based on witness's express lack of certainty, but reminding appellate court that, "[u]nless the available record clearly reveals a different result is appropriate, an appellate court must defer to the jury's determination concerning what weight to give contradictory testimonial evidence because resolution often turns on an evaluation of credibility and demeanor, and those jurors were in attendance when the testimony was delivered."); *Goodman v. State,* 66 S.W.3d 283, 285–86 & n. 5 (Tex.Crim.App.2001) (attempting to follow Justice Calvert's five-zone analysis of factual insufficiency in civil cases and stating that, only when the evidentiary scales tip "radically" toward a negative finding on an essential element may the reviewing court exercise any "thirteenth juror" role and conclude that the jury's verdict is "clearly wrong"); *Swearingen v. State,* 101 S.W.3d 89, 97 (Tex.Crim.App.2003) (reiterating the importance of giving deference to the factfinder's credibility and weight determinations); *Zuniga v. State,* 144 S.W.3d 477, 483–84 (Tex. Crim.App.2004) (recognizing that the different civil and criminal standards of proof are an important source of confusion in any attempt to review criminal convictions for factual sufficiency; "Once again, the preponderance-of-the-evidence language creeps into a factual-sufficiency review where the burden of proof at trial was beyond a reasonable doubt. And, the Court's statement that the reviewing court must use both standards is confusing.").

**69.** 204 S.W.3d 404 (Tex.Crim.App.2006).

**70.** *Id.* at 415.

**71.** I am unable to find any Texas Supreme Court case that even mentions the word "neutral" in relation to a factual sufficiency review. In *In re King's Estate,* 150 Tex. 662,

244 S.W.2d 660, 661 (1951), the Supreme Court set out the applicable standard for reviewing "great weight and preponderance" complaints. The court of appeals must "consider and weigh all of the evidence in the case and to set aside the verdict and remand the cause for a new trial, if it thus concludes that the verdict is so against the great weight and preponderance of the evidence as to be manifestly unjust-this, regardless of whether the record contains some 'evidence of probative force' in support of the verdict. The evidence supporting the verdict is to be weighed along with the other evidence in the case, including that which is contrary to the verdict." *Id.* at 664–65 (citation omitted). There is nothing in this case, or any other Texas Supreme Court case, that suggests that all of the evidence must be viewed "neutrally," as if the sheer quantity of evidence were the only criterion for factual sufficiency. How extraordinary if the jury's verdict should be held to be "against the great weight and preponderance of the evidence" if seven gang members testified that their fellow gang-member defendant was with them the night of the murder while only two nuns testified that they saw the defendant commit the murder. Any jury is entitled to disbelieve the seven gang members and credit the two nuns.

**72.** 823 S.W.2d 375, 381 (Tex.App.-Austin 1992, pet. ref'd). In *Stone,* the court of appeals stated:

When the court of appeals conducts a factual-sufficiency review, the court does not ask if any rational jury, *after viewing the evidence in the light most favorable to the prosecution,* could have found the essential elements of the crime beyond a reasonable doubt. Factual-sufficiency review begins with the presumption that the evidence supporting the jury's verdict was legally sufficient, i.e., *constitutionally* sufficient for the purposes of the Due Process Clause of the

without further analysis, into this Court's decision in *Clewis*. Indeed, in *Lancon v. State*,[73] a post-*Watson* decision in 2008, we again rejected the "neutral" light analysis and held that it is the jury's sole prerogative to make credibility decisions. Appellate courts must defer to those credibility assessments; they may not view all conflicting witness testimony as equally credible.[74] Witnesses are not fungible, some are credible and some are not. Neither juries nor appellate courts must tally up the number of witnesses "neutrally" and then base a sufficiency decision on the greater number.

In sum, we have never been successful in our attempts to superimpose the five-zone civil standards for sufficiency review on top of the constitutionally mandated legal sufficiency review of a criminal conviction. These two standards of review depend upon their distinctly different burdens of proof. Like oil and water, they do not mix. They are not logically consistent, and they promote only confusion and conflation of two distinct concepts. We are required to follow the heightened *Jackson* legal sufficiency formulation; we cannot follow a lesser factual sufficiency formulation.

I agree that it is time to consign the civil-law concept of factual sufficiency review in criminal cases to the dustbin of history.

PRICE, J., dissenting in which MEYERS, JOHNSON, and HOLCOMB, JJ., joined.

By dint of persistence, a plurality of the Court purports to overrule *Clewis*.[1] The plurality frames the question as a policy choice, asserting that we granted discretionary review in order to determine whether "there is a need to retain" factual sufficiency review.[2] But as our opinion less than four years ago in *Watson* demonstrated, the authority to reverse a conviction on the basis of factual insufficiency has been recognized from the beginning to be inherent in the appellate jurisdiction of first-tier appellate courts in Texas.[3] We cannot simply decide it need not be "re-

Fourteenth Amendment. Rather, the court views all the evidence without the prism of "in the light most favorable to the prosecution." Because the court is not bound to view the evidence in the light most favorable to the prosecution, it may consider the testimony of defense witnesses and the existence of alternative hypotheses. The court should set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Id.* The court of appeals then cited *Cain v. Bain*, 709 S.W.2d 175, 176 (1986), and *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660, 661 (1951), but neither of these cases said anything about viewing the evidence "in a neutral light" or "without the prism of 'in the light most favorable' " to the party with the burden of proof. They spoke only of reviewing *all* of the evidence when determining whether the verdict was "against the great weight and preponderance of the evidence." And that is precisely what is required under the *Jackson* legal sufficiency review: an ex-

amination of *all* of the evidence, but in the light most favorable to the jury's verdict because the jury, not the appellate court, was the chosen factfinder.

**73.** 253 S.W.3d 699 (Tex.Crim.App.2008).

**74.** *Id.* at 705 (noting that factual insufficiency claim cannot be based on contradictory and inconsistent witness testimony because "the jury is the sole judge of what weight to give such testimony.... Appellate courts should afford almost complete deference to a jury's decision when that decision is based upon an evaluation of credibility.").

**1.** *Clewis v. State*, 922 S.W.2d 126 (Tex.Crim. App.1996).

**2.** Plurality opinion, at 894.

**3.** *Watson v. State*, 204 S.W.3d 404, 406–14 (Tex.Crim.App.2006). *See also Clewis, supra*, at 137–44 (Clinton, J., concurring); *Bigby v.*

tained" any longer absent a change in the constitutional and statutory provisions that confer that jurisdiction—or else a change in our own long-standing construction of those provisions. To be sure, the plurality today would undoubtedly change those constructions too, if only it could invoke something more substantial than dissenting opinions to justify it.

## I.

The plurality's primary justification for overruling *Clewis* is that, because the standards for factual sufficiency and legal sufficiency have essentially melded into one, there is no longer any "meaningful distinction between them that would justify retaining them both."[4] But the plurality's premise is flawed. The plurality begins its analysis with the claim that *Watson* itself "recognized" that the two standards were "barely distinguishable."[5] What *Watson* actually recognized was that the standard for factual sufficiency, as partially reformulated in *Zuniga*,[6] which *Watson* overruled in part, "seems barely distinguishable" from the legal sufficiency standard from *Jackson v. Virginia*.[7] The only difference is that the former views all of the evidence in a "neutral" light rather than, as in the latter, "in the light most favorable to the verdict." But we insisted in

*Watson*—as I still do—that "the distinction is a real one[.]"[8]

A holding of legally insufficient evidence—that is, that the evidence is so lacking that federal due process will not tolerate a conviction—has double jeopardy implications.[9] Under the standard established by *Jackson v. Virginia* for deciding whether the evidence satisfies due process, a reviewing court "faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution."[10] But this kind of categorical deference is not required of a reviewing court in Texas when conducting a non-due-process review for factual sufficiency. For a reviewing court to view the evidence in a "neutral" light means that it need not resolve every conflict in the evidence, or draw every inference from ambiguous evidence, in favor of the defendant's guilt just because a rational jury *could* have. Rational juries can also choose to acquit a defendant even when presented with legally sufficient evidence.[11] Factual sufficiency review recognizes that there may be rare cases in which, though some jury might convict, and it would not be irrational for it to do

*State*, 892 S.W.2d 864, 874–75 (Tex.Crim.App. 1994).

4. Plurality opinion, at 894–95.

5. *Id.* at 8.

6. *Zuniga v. State*, 144 S.W.3d 477 (Tex.Crim. App.2004).

7. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

8. *Watson v. State, supra*, at 415.

9. *Burks v. United States*, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978); *Greene v. Massey*,

437 U.S. 19, 98 S.Ct. 2151, 57 L.Ed.2d 15 (1978).

10. *Jackson v. Virginia, supra*, at 326, 99 S.Ct. 2781.

11. *See Watson v. State, supra*, at 416 ("The fact is that rational people can disagree whether legally sufficient evidence is persuasive to a level of confidence beyond a reasonable doubt. 'That rational men disagree is not in itself equivalent to a failure of proof by the State, nor does it indicate infidelity to the reasonable doubt standard. Jury verdicts finding guilt beyond a reasonable doubt are regularly sustained even though the evidence was such that the jury would have been justified in having a reasonable doubt.' "(quoting

so, most juries would almost certainly harbor a reasonable doubt given the tenuousness of the State's evidence or the weight and apparent credibility and/or reliability of the exculpatory evidence. Under these circumstances, factual sufficiency review in Texas permits a first-tier appellate court to reverse a conviction and remand for a new trial, in the interest of justice, to grant the defendant a second chance to obtain a jury acquittal.[12]

The deference required of the appellate court in a factual sufficiency review is of a different kind than that required by legal sufficiency. It is not, as with legal sufficiency analysis, total deference to the jury's prerogative to resolve all conflicts and ambiguities in the record against the defendant. Instead, it is a qualified deference to the jury's apparent assessment of the weight, credibility, or reliability of the (admittedly legally sufficient) evidence. This deference is important because it respects the jury's fact-finding role at the

trial court level.[13] But it is not the absolute deference that legal sufficiency review affords to the jury's resolution of conflicts and ambiguities. It demands that, before a first-tier appellate court may reverse a conviction based upon factually insufficient evidence, it must be able to say, with some objective basis in the record, that the jury's verdict, while legally sufficient, is nevertheless against the great weight and preponderance of the evidence, and therefore "manifestly unjust."[14] This does not grant an appellate judge license to declare the evidence to be factually insufficient "simply because, on the quantum of evidence admitted, he would have voted to acquit had he been on the jury. Nor can an appellate court judge declare that a conflict in the evidence justifies a new trial simply because he disagrees with the jury's resolution of that conflict."[15]

The plurality asserts that this is not a true factual sufficiency review because it:

*Johnson v. Louisiana*, 406 U.S. 356, 362, 92 S.Ct. 1620, 32 L.Ed.2d 152 (1972))).

12. "A reversal based on the weight of the evidence ... can occur only after the State both has presented sufficient evidence to support conviction and has persuaded the jury to convict. The reversal simply affords the defendant a second opportunity to seek a favorable judgment." *Tibbs v. Florida*, 457 U.S. 31, 42–43, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982). This is one of the reasons that reversal for factual insufficiency does not carry double jeopardy implications. Even when a rational jury *could* resolve all conflicts and ambiguities in the evidence in such a way as to justify a conviction, if the appellate court perceives that most juries would not, and (as in Texas) has the authority to act on that perception, it does not place the defendant twice in jeopardy to, at his own instigation, grant him "a second opportunity to seek a favorable judgment." "Giving the defendant this second opportunity, when the evidence is sufficient to support the first verdict, hardly amounts to governmental oppression of the sort against which the Double Jeopardy Clause was intended to protect." *Id.* at 44,

102 S.Ct. 2211 (internal quotation marks and citation omitted).

13. None of the cases the plurality cites today, not even *Lancon v. State*, 253 S.W.3d 699 (Tex.Crim.App.2008), has held that the statutory provisions assigning the fact-finding function at the trial level to the jury demands absolute deference from a reviewing court. TEX CODE CRIM. PROC arts. 36.13 & 38.04. As we pointed out in *Watson*, these provisions have "peacefully co-existed" with appellate factual review authority "for at least a hundred and twenty-three years." *Watson v. State, supra*, at 409. We have used qualifiers such as "due" (*Marshall v. State*, 210 S.W.3d 618, 625 (Tex.Crim.App.2006)) and "appropriate" (*Clewis v. State, supra*, at 136) and "*almost* complete"(*Lancon, supra*, at 705) to describe the deference in the factual sufficiency context, to signify that the use of factual sufficiency review to reverse a jury's conviction should be a rare occurrence.

14. *Watson v. State, supra*, at 417.

15. *Id.*

is inconsistent with the evidentiary-weight standard described in *Tibbs* (and purportedly adopted in *Clewis* ) and with viewing the evidence in a "neutral light," which permit the reviewing court to show **no** deference at all to a jury's credibility and weight determinations and to sit as a "thirteenth juror" without any limitation and to declare that a conflict in the evidence justifies a new trial simply because the reviewing court disagrees with the jury's resolution of conflicting evidence. *See Tibbs*, 457 U.S. at 42, 102 S.Ct. 2211.[16]

This passage represents a distorted view of factual sufficiency review. I agree that the citation to *Tibbs* supports the proposition that *when* a reviewing court *does* overturn a jury verdict as too tenuous or against the great weight and preponderance of the evidence, it acts as a thirteenth juror and does not, ultimately, defer to the jury's resolution of weight and credibility.[17] But *Tibbs* does not support the assertion that factual sufficiency is not genuinely factual sufficiency unless the reviewing court sits as a thirteenth juror "without any limitation." It is true that we insist that a simple disagreement with the jury's resolution of conflicting evidence will not support a reversal under a factual sufficiency review. Not every appellate disagreement with a jury verdict signifies that the jury verdict is "manifestly unjust"—in fact, most do not. And when

that is the case, a reviewing court must decline to exercise its fact jurisdiction to reverse and remand for a new trial. But this limitation does not mean that when a reviewing court *does* exercise its prerogative to reverse and remand a conviction for factual insufficiency, either because the State's evidence is intolerably tenuous or because the verdict is against the great weight of the evidence, it has not acted as a thirteenth juror.[18] Obviously, it has. And that is precisely why *Tibbs* holds that such a reversal carries no double jeopardy consequences.

As for the plurality's claim that a factual sufficiency review that pays any deference at all to the jury's verdict is not really a review of the evidence in a "neutral light," [19] this is simply inaccurate. Deference is not an all-or-nothing proposition. A reviewing court may look to the record *without* the requirement of resolving conflicts and ambiguities in the light most favorable to the jury's verdict and *still* limit the exercise of its power to reverse and remand for a new trial in the interest of justice, out of deference to the jury's verdict, to those cases in which the State's evidence is *most* tenuous or the weight of the evidence *greatly* preponderates against conviction. The qualified deference that we have said first-tier appellate courts should pay to jury verdicts does not somehow convert factual sufficiency review into legal sufficiency review.

---

16. Plurality opinion, at 901.

17. "A reversal on [the ground that the verdict is against the weight of the evidence], unlike a reversal based on insufficient evidence, does not mean that acquittal was the only proper verdict. Instead, the appellate court sits as a 'thirteenth juror' and disagrees with the jury's resolution of the conflicting testimony." *Tibbs v. Florida, supra*, at 42, 102 S.Ct. 2211.

18. There is no suggestion that Florida law leading up to the Supreme Court's decision in

*Tibbs* authorized appellate courts, "without any limitation," to reverse convictions and remand for new trials any time they happened to disagree with a jury's verdict. *Tibbs v. State*, 397 So.2d 1120 (Fla.1981).

19. Plurality opinion, at 900 ("if a reviewing court is required to defer in any manner to a jury's credibility and weight determinations, then it is not viewing the evidence in a 'neutral light[.]' ").

Therefore, even if I agreed that we could simply jettison factual sufficiency review as a matter of policy, I would not accept the plurality's primary justification for doing so.

## II.

Having declared the standards for legal and factual sufficiency review to be indistinguishable, the plurality finds it necessary to eliminate the latter because a finding of factual insufficiency might necessitate an appellate acquittal.[20] Because I do not accept the premise that the standards are indistinguishable, I do not share the plurality's concern.

## III.

Next the plurality cites various policy considerations for dispensing with factual sufficiency review. First, the plurality quotes with approval a number of reasons that the Florida Supreme Court listed to explain why it would no longer entertain evidentiary-weight grounds on appellate review.[21] Insofar as I can tell, however, there was no argument to be made in the criminal appellate courts of Florida that factual review was considered to be inherent in their appellate jurisdiction, as we have said it is in ours. For this reason, the Florida Supreme Court was free to reject any attempt to raise such a claim

purely on policy grounds. Next, the plurality today endorses an argument from one of the dissenting opinions in *Watson,* a sort of cost/benefit analysis that concludes that factual sufficiency review is simply not worth the candle.[22] Such policy considerations cannot by themselves serve to trump the constitutional and statutory authority of first-tier appellate courts in Texas to conduct factual sufficiency review, recognized in our case law long before *Clewis* was decided.[23]

## IV.

Any argument to undermine the basis for that constitutional and statutory authority, the plurality has saved for last— perhaps because it can only muster dissenting opinions to support it. The plurality in fact acknowledges that "[t]here is very little to add to what this Court has already extensively written on a direct-appeal court's constitutional and statutory authority to apply this factual sufficiency standard in criminal cases."[24] Indeed, the arguments have been aired and rejected in this Court many times in recent years. Even so, the plurality today somehow manages to characterize the question of the jurisdiction of first-tier criminal appellate courts in Texas to conduct factual sufficiency review as one of first impression.[25] But of course this is not an issue of

---

20. *Id.* at 18 ("We believe that the *Clewis* factual-sufficiency standard with its remedy of a new trial could very well violate double jeopardy principles under *Tibbs* if factual-sufficiency is 'barely distinguishable' from legal-sufficiency review.").

21. *Id.* at 20.

22. *Id.* at 20–22 *(citing Watson v. State, supra,* at 450 (Cochran, J., dissenting)).

23. *Watson v. State, supra,* at 406–12.

24. Plurality opinion, at 907–08.

25. *See Id.* at 28 ("The issue *thus becomes* whether direct-appeal courts' constitutional jurisdiction to review 'questions of fact,' as also codified in Article 44.25 [of the Code of Criminal Procedure] authorizing direct-appeal courts to reverse a judgment 'upon the facts,' should *now* be construed *for the first time* to mandate direct-appeal courts to sit as 'thirteenth jurors' in criminal cases *contrary to 150 years of practice in civil and criminal cases.* We decline to question over 150 years of criminal and civil jurisprudence in this State and construe constitutional and statutory mandates to review 'questions of fact' to also require direct-appeal courts to sit as

first impression; if it were, there would be no *Clewis* (or, for that matter, *Watson* ) to overrule.

And yet overrule *Clewis* the plurality purports to do. Along the way, the plurality fails even to pay lip service to the doctrine of *stare decisis*. *Stare decisis* dictates that "we keep in mind the strong preference for adhering to past decisions[.]"[26] It is better, we have often said, to be consistent than to be right (although I regard this as a rebuttable presumption).[27] Still, we have acknowledged that there are legitimate justifications for overruling established precedent, and we do not hesitate to do so "if the reasons ... are weighty enough."[28] I suppose that, were it to address the question head on, the plurality today might argue (judging by its policy arguments for abandoning factual sufficiency review—all of which we have rejected in the past) that factual sufficiency review has become "unworkable."[29] In keeping with the overarching theme of its opinion, the plurality might argue that because the standard for reviewing the evidence for factual sufficiency is now indistinguishable from the standard for reviewing legal sufficiency, and because this lack of distinction might create jeopardy problems, we must not construe the fact jurisdiction of first-tier criminal appellate courts to include a review for factual sufficiency. Because I reject these premises, I would reject any argument that the presumption that consistent-is-better-than-right has been rebutted.[30] The only thing that arguably makes *Clewis* seem unworkable is this Court's lamentable propensity to grant a State's petition for discretionary review every three or four years to revisit the question whether it is unworkable. The arguments themselves are not new.

To purporting to overrule *Clewis* (and the century of case law that preceded it that exercised fact review jurisdiction to reverse convictions that were built on too tenuous a foundation or were against the great weight of the evidence),[31] and remanding the cause to the court of appeals

'thirteenth jurors' in criminal cases.") (emphasis supplied).

26. *Ex parte Lewis*, 219 S.W.3d 335, 338 (Tex. Crim.App.2007).

27. *Id.; Roberts v. State*, 273 S.W.3d 322, 334 n. 11 (Tex.Crim.App.2008) (Price, J., concurring).

28. *Ex parte Lewis, supra.*

29. *E.g., Paulson v. State*, 28 S.W.3d 570, 571–72 (Tex.Crim.App.2000).

30. It is sometimes argued that factual sufficiency review is inefficient because it results in so few reversals anyway. *See, e.g., Watson v. State, supra*, at 448 (Cochran, J., dissenting). But factual sufficiency review operates like a fail-safe mechanism, and one would hope that in any reasonable system of criminal justice it would be rare that ordinary procedural mechanisms would fail to ensure just results. It is also argued that the very existence of factual sufficiency review puts a certain psychological pressure on first-tier appellate courts to find evidence that is legally sufficient nevertheless to be legally *insufficient* in order to avoid jeopardy consequences; after all, the appellate court can always hold the evidence factually insufficient instead. *Id.* at 449. The notion is, as I gather, that without factual sufficiency review, first-tier appellate courts would actually acquit more appellants as a matter of appellate review. *Id.* But I find it difficult to understand why it is better to encourage more appellate acquittals than it is to encourage more appellate reversal-and-remands in which a second jury would be given an opportunity to acquit. *See* n. 12, *ante.* If the Court is genuinely concerned about the sanctity of the jury's role as arbiter of the facts, should it not prefer that acquittals come from juries rather than appellate judges?

31. *See Watson v. State, supra*, at 409–12 (discussing cases from this Court between 1891 and 1940 that reversed on the basis of factual insufficiency).

to revisit its legal sufficiency analysis, I dissent.