# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-09-00587-CR

**Gary Dwayne Oatman, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF BELL COUNTY, 426TH JUDICIAL DISTRICT
### NO. 62,246, HONORABLE FANCY H. JEZEK, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

A jury found appellant Gary Dwayne Oatman guilty of aggravated assault with a deadly weapon. *See* Tex. Penal Code Ann. § 22.02(a)(2) (West Supp. 2010). The court assessed punishment, enhanced by previous felony convictions, at seventy years in prison. In a single issue, appellant contends that the evidence is legally insufficient to sustain the finding of guilt. We overrule this contention and affirm the conviction.

Just before midnight on June 18, 2007, Officer Miguel Mirabel was dispatched to a motel in Killeen in response to a 911 call. Appellant was waiting for Mirabel in the parking lot of the motel, which was known to Killeen police as a center for drug use and prostitution. Appellant told the officer that his girlfriend had been stabbed and directed him to room 149. Upon entering the room, Mirabel found the complainant, April Seda-Rodriguez, sitting on the bed and holding her side. Seda-Rodriguez, who was obviously in pain, told Mirabel that two black men had robbed

her and stabbed her with a screwdriver. Appellant told Mirabel that the two men had engaged Seda-Rodriguez for an act of prostitution, that he had left her in the room at about 11:00 p.m. before the men arrived, and that he had found her lying injured on the floor when he returned at 11:50.

Neither Mirabel nor the other officers who arrived at the scene took any photographs. Mirabel testified that he spoke to the occupants of room 150, next door to room 149, but they told him that they had heard nothing. Officer Barbara Matos testified that she later overheard these same persons talk about seeing two black men, but she did not interview these persons because she was ordered to go with Seda-Rodriguez to the site where the emergency helicopter was to arrive.

Paramedic Zack Peterson treated the complainant at the apartment and on the way to the hospital. He testified that she had a puncture wound to her chest that resulted in a tension pneumothorax, which he described as air filling the lung cavity. He characterized this condition as life-threatening.

Nurse Erica Harwell saw Seda-Rodriguez in the hospital emergency room. She testified that the hospital records indicated that when the complainant arrived at the hospital, she had seven stab wounds and her condition was guarded. The records contained this notation: "Patient was attacked by her boyfriend in Killeen with a screwdriver." Harwell testified that this note was probably based on statements made by Seda-Rodriguez to the helicopter crew. The records also reflected that at the hospital, the complainant said that "he just sit there for hour and a half watching me. He said he was going to watch me die, I begged him to call 911."

Seda-Rodriguez remained in the hospital for a week. After she was released, she went to the police and gave a statement accusing appellant of having stabbed her. Photographs of the complainant's wounds taken at this time were admitted in evidence.

Seda-Rodriguez testified that she and appellant were living in room 149. On the night of the assault, she had been smoking crack cocaine with a man she knew as Moe and his girlfriend, who both lived in room 148. Appellant came to the room and told her that she had a "date." When she returned to room 149, however, there was no one waiting for her. Instead, appellant grabbed her by the throat and began to hit her. Appellant then threw her to the floor, pulled a screwdriver from his pocket, and began to stab her. Seda-Rodriguez testified, "The first stab wound was to my lung because I could hear the air release and I had trouble breathing." She added that appellant called her "bitch" and said, "I'm going to kill you. You're going to die tonight." When appellant finally stopped his attack, the complainant went to the bathroom and locked the door. Appellant forced open the bathroom and made Seda-Rodriguez sit on the bed, telling her that he wanted to watch her die. She begged him to call 911 and he finally agreed to do so, but only after she agreed to say that she had been attacked by two black robbers. She testified that she told the truth to the ambulance crew after she was safely on the way to the hospital.

Adam Morris, or "Moe," corroborated the complainant's testimony. He testified that he and Seda-Rodriguez smoked crack together that night, as they often did. After the complainant returned to room 149 with appellant, Morris heard a commotion and twice went next door to investigate. On both occasions, appellant came to the door and told Morris to mind his own business. Morris testified that he saw Seda-Rodriguez lying on the floor next to the bed. Morris

3

added that he later saw appellant standing outside room 149. He said that appellant was breathing heavily and his hair was "frazzled." Morris noticed a screwdriver in appellant's back pocket. Morris, who admitted to having an extensive criminal record, testified that he left the motel when the police arrived. He did not speak to the police about the incident until they contacted him in 2009, shortly before appellant's trial.

When there is a challenge to the sufficiency of the evidence to sustain a criminal conviction, the question presented is whether, after viewing all the evidence in the light most favorable to the verdict, a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). The reviewing court may impinge on the trier of fact's discretion only to the extent necessary to guarantee the fundamental protection of due process of law. *Id*. The *Jackson* standard is the only standard that a reviewing court applies in determining whether the evidence is sufficient to prove the defendant's guilt beyond a reasonable doubt. *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010).

Appellant does not deny that Seda-Rodriguez was assaulted with a deadly weapon, but he urges that the evidence does not support the finding that he was the assailant. His argument is largely an attack on the credibility of the complainant and Morris. He also faults the police for having failed to investigate the report of two black males seen at the motel on the night of the assault. Appellant asserts that "the evidence points to the reasonable conclusion that Seda-Rodriguez's first report to the police was the true report of what happened to her." He further submits that the complainant later "seized on circumstances after the fact to remove [appellant] from

4

her life and, perhaps, to improve her position with police who were investigating serious criminal charges against her."

Appellant's alternative hypothesis does not take into account the complainant's statements to medical personnel on the night of the assault. The medical records in evidence demonstrate that the complainant identified appellant as her attacker almost immediately after she was removed from his presence. More fundamentally, appellant's argument asks the Court to substitute its view of the credibility of the witnesses for the jury's. Under *Jackson*, however, we must assume that the jury resolved conflicts in the testimony, weighed the evidence, and drew reasonable inferences in a manner that supports the verdict. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). Applying the proper standard of review to the record before us, we hold that a rational trier of fact could have found each element of the offense beyond a reasonable doubt.

The judgment of conviction is affirmed.

_____

Melissa Goodwin, Justice

Before Chief Justice Jones, Justices Henson and Goodwin

Affirmed

Filed: June 9, 2011

Do Not Publish

5