

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

_____

No. 07-14-00171-CR
_____

JESUS EFRAIN ABREGO, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

On Appeal from the 371st District Court
Tarrant County, Texas
Trial Court No. 1335057D, Honorable Mollee Westfall, Presiding

March 13, 2015

## MEMORANDUM OPINION

Before QUINN, C.J., and HANCOCK and PIRTLE, JJ.

Appellant, Jesus Efrain Abrego, appeals the trial court's judgment in which he was convicted of aggravated robbery and sentenced to forty years' imprisonment.[1] On appeal, he challenges the sufficiency of the evidence to establish that he was the individual who committed aggravated robbery. We will affirm.

---

[1] See TEX. PENAL CODE ANN. § 29.03 (West 2011).

Factual and Procedural History

Financial planner, Umer Usman, is also a photography hobbyist, and he met with a model named Megan Finster through a photography networking site. In July 2013, the two met at Finster's apartment for a photo shoot that lasted about two hours. Usman prepared to leave, and he and Finster were walking together to Usman's car discussing future photo shoots when Finster got a phone call and briefly went back inside her apartment. Usman waited near his car for her to come back out so that he could pay her per their agreement. As the two resumed their discussion about a future shoot, two men—one wielding a gun—approached Usman and robbed him of most of his belongings, including his wallet, checkbooks, cell phone, glasses, camera, photography equipment, car decals from his regular job, and even a pack of energy drinks. The two men ran from the car, and, as they did so, the gunman kept stumbling and dropping items. During that less than graceful getaway, Usman was able to get a good look at the perpetrators; at one point, the gunman stopped to look for a dropped item and looked directly at Usman.

Usman directed Finster to call the police, and he drove away from the apartment complex thinking she had done so. He parked in the street by a nearby gas station, turned on his hazard lights, and flagged down Haltom City police officer Brian Matos as he passed by.[2] Usman described the encounter to Matos, who went with Usman to the scene and spoke with Finster there as well. During his interaction with Finster, Matos noted that her behavior and demeanor were atypical of a recent victim of an aggravated

_____

[2] Apparently, Finster made no attempt to summon police, and it was coincidence that Matos happened to be passing by the area and noticed Usman signaling for assistance.

robbery. He described her nervousness and her reluctance to share information with him as "very strange." While the two talked, he also noted that someone named "Bullfrog" kept calling her phone.

Matos turned over his report to the assigned detective, and, by the next day, the police had prepared a photographic line-up from which Usman was able to identify appellant. Usman indicated to the detective administering the photographic line-up that he was seventy percent certain that the individual he identified was the gunman who had robbed him the previous day.

Three days after the robbery, Officer Jason Rogers was on patrol when he noticed that a vehicle was being driven erratically and lunging forward in such a way that Rogers thought the driver might be having mechanical problems with the vehicle. He reported to dispatch that he was on a "motorist assist" call. He approached the vehicle and learned that the problem was the driver's inexperience with driving a vehicle with a manual transmission. As he was dealing with the situation, Rogers also recognized a passenger in the car as appellant, whose nickname—Bullfrog—is familiar to Haltom City police and knew that a warrant had been issued for appellant in connection with the aggravated robbery. Rogers arrested him. Appellant was charged and convicted of aggravated robbery and sentenced to forty years' imprisonment. He has appealed that conviction, contending the evidence was insufficient to support it. We will affirm.

Standard of Review and Applicable Law

In assessing the sufficiency of the evidence, we review all the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010). "[O]nly that evidence which is sufficient in character, weight, and amount to justify a factfinder in concluding that every element of the offense has been proven beyond a reasonable doubt is adequate to support a conviction." *Brooks*, 323 S.W.3d at 917 (Cochran, J., concurring). We remain mindful that "[t]here is no higher burden of proof in any trial, criminal or civil, and there is no higher standard of appellate review than the standard mandated by *Jackson*." *Id.* When reviewing all of the evidence under the *Jackson* standard of review, the ultimate question is whether the jury's finding of guilt was a rational finding. *See id.* at 906–07 n.26 (discussing Judge Cochran's dissenting opinion in *Watson v. State*, 204 S.W.3d 404, 448–50 (Tex. Crim. App. 2006), as outlining the proper application of a single evidentiary standard of review). "[T]he reviewing court is required to defer to the jury's credibility and weight determinations because the jury is the sole judge of the witnesses' credibility and the weight to be given their testimony." *Id.* at 899.

Therefore, when the evidence would support conflicting inferences, we must presume that the factfinder resolved the conflicts in favor of its verdict and must defer to that determination. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007) (citing *Jackson*, 443 U.S. at 326). The deference we are required to give a jury's verdict is perhaps most acute when it depends on the jury's evaluation of the credibility of

4

witnesses and the weight to be given their testimony. *See Speed v. State*, No. 07-13-00034-CR, 2015 Tex. App. LEXIS 171, at *6 (Tex. App.—Amarillo Jan. 9, 2015, no pet.) (mem. op., not designated for publication) (citing *Brooks*, 323 S.W.3d at 894).

Evidence as to the identity of the perpetrator of an offense can be proved by direct or circumstantial evidence. *Earls v. State*, 707 S.W.2d 82, 85 (Tex. Crim. App. 1986) (en banc) (discussing identity of perpetrator of robbery). A victim's positive identification of a defendant as the perpetrator is sufficient to support a conviction. *Cate v. State*, 124 S.W.3d 922, 928–29 (Tex. App.—Amarillo 2004, pet. ref'd) (citing *Garcia v. State*, 563 S.W.2d 925, 928 (Tex. Crim. App. [Panel Op.] 1978), and *Lopez v. State*, 815 S.W.2d 846, 849 (Tex. App.—Corpus Christi 1991, no pet.)); *see Johnson v. State*, 176 S.W.3d 74, 77 (Tex. App.—Houston [1st Dist.] 2004, pet. ref'd).

Analysis

The record contains direct evidence supporting the conclusion that appellant was the gunman who perpetrated the aggravated robbery. Usman testified that he was able to get a good look at the gunman as the two men fled the scene. Usman viewed a photographic line-up the very next day and identified appellant as the gunman of the duo who robbed him in the parking lot. At that time, he was seventy percent certain of his identification; he was not absolutely certain, but this identification is evidence from which the jury could assign its weight of the evidence going to identity. Further, Usman identified appellant in court as the gunman, and he was "[p]ositive" of his in-court identification. This unequivocal in-court identification is more direct evidence from

5

which the jury could have determined that appellant was one of the men who robbed Usman. *See Johnson*, 176 S.W.3d at 77; *Cate*, 124 S.W.3d at 928–29.

Going even further, Usman's identification of appellant as one of the perpetrators is consistent with other, circumstantial evidence supporting the conclusion that it was appellant who committed the robbery. *See Earls*, 707 S.W.2d at 85. During his investigation, Officer Matos noticed that someone identified as Bullfrog called the suspicious-acting Finster several times shortly after the robbery. He noted the name, apparently one rather familiar to Haltom City police, and passed along that information to the detective in charge of the case. That Usman independently identified the gunman as appellant, who became quickly and closely connected by nickname to the incident, buttresses appellant's connection to the robbery and serves as additional, circumstantial evidence supporting the jury's determination that appellant was one of the perpetrators of the aggravated robbery.

Because the jury is the sole judge of the credibility of the witnesses and the weight to be given their testimony and because resolution of conflicts or inferences therefrom lies within the exclusive province of the jury, it may choose to believe all, none, or some of the evidence presented to it. *See Lancon v. State*, 253 S.W.3d 699, 707 (Tex. Crim. App. 2008); *Heiselbetz v. State*, 906 S.W.2d 500, 504 (Tex. Crim. App. 1995) (en banc). Here, there is sufficient evidence from which the jury could determine that appellant was one of the men who robbed Usman. We overrule appellant's sole point of error.

Conclusion

Having overruled appellant's sole point of error, we affirm the trial court's judgment of conviction.  *See* TEX. R. APP. P. 43.2(a).


Mackey K. Hancock
Justice


Do not publish.